782 A.2d 517

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Craig WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 23, 1999.

Decided Oct. 19, 2001.

Robert Brett Dunham, Billy H. Nolas, Philadelphia, for appellant, Craig Williams.

Catherine Marshall, Michael A. Morse, Philadelphia, for appellee, Com.

Robert A. Graci, Harrisburg, for appellee, Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

This is an appeal from an order of the Court of Common Pleas of Philadelphia County dismissing a petition for post-conviction relief in this capital case. We vacate the post-conviction court's order and remand for further proceedings.

On April 3, 1987, Appellant Craig Williams ("Williams") shot and killed Gordon Russell, a pedestrian who was returning from a grocery store. In Williams' ensuing prosecution for first-degree murder and related offenses, the Commonwealth's theory of the case was that the bullet was a stray one that had been aimed at Erica Riggins, a woman who previously had fought with Jean Hargrove, Williams' pregnant girlfriend. In the guilt phase defense, trial counsel presented testimony from several witnesses who claimed that the fatal shot was fired by Ms. Riggins; however, the testimony of such witnesses was conflicting, manifested internal inconsistencies, and found little support in the physical evidence. At the penalty phase of trial, the parties stipulated to Williams' three prior felony convictions. Based on such stipulation and the trial record, the Commonwealth proceeded upon the aggravating circumstances of a significant history of felony convictions involving use or threat of violence, 42 Pa.C.S. § 9711(d)(9), and creation of grave risk to others, 42 Pa.C.S. § 9711(d)(7). Williams offered testimony from three witnesses in mitigation: his mother, Jean Hargrove, and Christine Williams, a nurse who had cared for Williams as he recovered from a surgery. The jury found the grave risk aggravator and no mitigating circumstances and sentenced Williams to death, following which the trial court denied post-trial motions. Substitute counsel was appointed for purposes of perfecting an appeal.

On April 23, 1991, trial counsel committed suicide. Appellant alleges that this occurred on the day before he was to be indicted on charges of money laundering for a large narcotics ring.

On October 9, 1992, this Court affirmed Williams' conviction and sentence. *See Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716 (1992).

On May 20, 1996, Williams filed a *pro se* petition under the Post–Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546 (the "PCRA"), in the court of common pleas.[1] Counsel was ap-

---

1. Previously, Williams had sought federal *habeas corpus* relief with respect to the issues raised in the direct appeal, which was denied. *See Williams v. Love*, 1995 WL 303634 (E.D.Pa. May 17, 1995).

pointed in due course and filed an amended PCRA petition. The petition contained a lengthy recitation of facts designed to portray trial counsel as ineffective in failing to prepare adequately for both the guilt and penalty phases of trial. The petition asserted that trial counsel waived valid objections; called witnesses without previously having interviewed them; put forward a jumbled and inconsistent defense; failed to make arguments predicated upon the evidence in support of a lesser degree of guilt; began assembling a penalty phase presentation on the eve of the guilt verdict; and put forward a truncated and inadequate presentation of mitigating circumstances to the sentencing jury. Williams offered to establish that trial counsel pressured Jean Hargrove and Erica Riggins to pay legal fees for Williams' defense, withheld legal services for reasons related to compensation, and labored under a conflict of interest by virtue of his acceptance of legal fees from actual and prospective witnesses. Further, Williams contended that trial counsel failed to develop substantial, available mitigating evidence in the form of circumstances surrounding the offense, including distress and confusion on the part of Williams concerning the altercation between Jean Hargrove and Erica Riggins; undeveloped family history; and attention deficit disorder, impulsiveness, and brain damage constituting an extreme mental or emotional disturbance. Additionally, in the amended petition, Williams asserted that the Commonwealth violated Pennsylvania Rule of Criminal Procedure 352 by failing to notify Williams in writing of the existence of aggravating circumstances; the trial court improperly instructed the jurors that they must unanimously find mitigating circumstances contrary to *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); trial counsel was ineffective for failing to seek a proper jury instruction in this regard; trial counsel was ineffective at *voir dire* in failing to ask venirepersons whether they viewed a first degree murder verdict as automatically requiring a sentence of death; and trial counsel was ineffective for failing to preserve issues related to the racial composition of the jury, *see Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Williams alleged ineffectiveness on the

part of appellate counsel with respect to the *Mills* and *Batson* issues, but did not make any other specific assertions in this regard in relation to any other issue, or any general allegation of ineffectiveness on the part of appellate counsel. Finally, Williams sought leave of court to file supplemental pleadings, affidavits, and memoranda in support of his eligibility for post-conviction relief.

In response to the amended petition, the Commonwealth filed a motion to dismiss, asserting, *inter alia,* prejudicial delay in the assertion of the alleged conflict of interest on the part of trial counsel, particularly in view of trial counsel's death; a failure on Williams' part to proffer evidence by way of affidavit or otherwise which would establish such conflict; previous litigation of claims of trial counsel's ineffectiveness in the penalty phase of trial; the absence of an affidavit of an expert witness to support the claim of ineffectiveness in failing to present mental health evidence in mitigation; the validity of the jury instructions challenged under *Mills;* the absence of any requirement of notice of aggravating circumstances at the time of Williams' trial; the absence of any requirement for life qualification of venirepersons; and the trial court's acceptance of reasons offered by the district attorney for peremptory challenges exercised. The Commonwealth did not specifically challenge Williams' claims on the basis of waiver due to the absence of an assertion of ineffectiveness on the part of appellate counsel.

On November 13, 1997, the PCRA court conducted oral argument concerning the Commonwealth's motion to dismiss. In addition to appointed PCRA counsel, an attorney for the former Center for Legal Education, Advocacy and Defense Assistance ("CLEADA") appeared and asserted that he had been authorized to act as co-counsel for Williams; however, the PCRA court declined to recognize such representation. After argument, the PCRA court announced its intention to dismiss the petition and subsequently issued formal notice of such intention pursuant to Pennsylvania Rule of Criminal Procedure 1509(C)(1), identifying as the reason for dismissal

that "[t]he issues raised in the PCRA Petition filed by your attorney are without merit."

Williams then filed a series of affidavits and documents under cover signed by PCRA counsel and counsel from CLEADA. The eight affiants included Williams' father, mother, brother, and sister; a childhood friend; Jean Hargrove; Erica Riggins; and Dr. Henry Dee, a licensed psychologist and neuropsychologist. The general tenor of the documents was in support of central averments of the amended petition. Several of the affidavits bolstered Williams' post-conviction description of the course of events surrounding the killing of Mr. Russell, emphasizing, in particular, that Williams was distraught and confused by the altercations between Hargrove and Riggins and set out at most to frighten Riggins by initiating the gunfire that resulted in Mr. Russell's death. Most of the affiants provided statements indicating that Williams was of good character but suffered from a traumatic childhood, aggravated by an alcoholic, abusive father. Various affiants described episodes involving head injuries to Williams and stated that Williams manifested persistent difficulties with distraction and control over his emotions. The affidavit and report of Dr. Dee indicated that Williams suffers from organic cerebral impairment and undermined intellectual and social functioning "of a long-standing nature," which was related to Williams' offense in terms of his capacity to appreciate the criminality of his conduct and mitigating factors involving major mental health illness. The affidavits of Jean Hargrove and Erica Riggins contain assertions that the affiants made substantial payments to trial counsel; that trial counsel failed to speak with witnesses about the case; and, in general, that trial counsel pursued a course of withholding legal services as a means to obtain compensation. In Ms. Riggins' affidavit, she also asserted that she appeared at the time of trial hoping to testify in support of the defense, but, at the direction of the assistant district attorney prosecuting the case, was restrained from entering the courtroom or approaching trial counsel. Most of the affiants indicated that they had not been contacted, interviewed at any length, and/or prepared for trial testi-

mony by trial counsel. The affiants generally expressed their willingness to testify fully to the contents of their affidavits at trial, had they been asked.

The PCRA court subsequently issued an order denying the amended petition, indicating that its disposition was accomplished after a review of the supplemental filings, although noting that the supplemental filing was by an attorney who was prohibited from entering his appearance.[2] No evidentiary hearing was provided. On December 31, 1997, PCRA counsel filed a notice of appeal. The PCRA court permitted PCRA counsel to withdraw, and counsel for CLEADA pursued the appeal by initially filing a statement of matters complained of on appeal setting forth the issues raised in the amended petition, as well as numerous others. The PCRA court then issued a written opinion reiterating the procedural history of the case and indicating:

> The P.C.R.A. Court has adopted the reasoning set forth in the Commonwealth's Motion to Dismiss ... as the reasons to support the denial of the P.C.R.A. Petition as amended. In the opinion of the P.C.R.A. Court, the Petition was properly dismissed for the foregoing reasons as outlined in the Commonwealth's Motion.

Williams filed a motion in this Court seeking, *inter alia,* a remand based upon "newly discovered evidence." The Commonwealth opposed such relief; however, following the issuance of *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167 (1999), in which this Court disapproved of the PCRA court's practice of adopting the Commonwealth's motion to dismiss as its opinion in capital PCRA cases, the Commonwealth filed an "assent to request for remand to conduct evidentiary hearing," indicating that

> [t]he Commonwealth is confident that none of defendant's appellant [sic] claims is meritorious. However, in light of the PCRA court's exclusive reliance on the Commonwealth's motion to dismiss, and this Court's recent opinion in *Com-*

---

**2.** Although the supplemental filing listed both PCRA counsel and counsel for CLEADA, the signature on the document appears to be that of appointed PCRA counsel.

*monwealth v. Williams,* encouraging PCRA courts to make credibility determinations, the Commonwealth believes that the proper course of action is a remand to the PCRA court for an evidentiary hearing. Although not all of defendant's claims involve the need for an evidentiary hearing, in light of the possibility that defendant may wish to modify, revise or eliminate some of the claims after the hearing, and the desire to avoid wasting this Court's time with piecemeal litigation, the entire case should be remanded to the PCRA court.

(citation omitted).

■ As both Williams and the Commonwealth agree, pursuant to *Williams,* 557 Pa. at 207, 732 A.2d at 1167, the appropriate course is to remand the present case for the preparation of an adequate opinion by the PCRA court. *See also id.* at 254, 732 A.2d at 1192–93 (Castille, J.)(emphasizing the PCRA courts' obligation to supply their independent reasoning for their decisions and positing that any review by this Court is premature until this occurs). *See generally Commonwealth v. Basemore,* 560 Pa. 258, 294–96, 744 A.2d 717, 738–39 (2000)(setting forth general guidance concerning the preparation of a PCRA court's opinion in the context of specific claims presented). The PCRA court will be authorized to conduct such hearings as may be necessary or appropriate to the completion of this task, guided by the framework established in *Williams,* 557 Pa. at 225–53, 732 A.2d at 1176–92.

■ While our recent decisions in *Williams* and *Basemore* focused upon the obligations of PCRA courts on review of a capital, post-conviction case, the pleadings in this case also raise questions concerning the performance of PCRA counsel which merit examination. As noted, in seeking post-conviction review, appointed counsel submitted a petition containing a series of lengthy factual and legal averments tied to a series of affidavits, none of which was specifically presented on direct appeal. Counsel did not, however, include an assertion of appellate counsel's ineffectiveness in failing to develop such

issues and facts; rather, the included averments concerning appellate counsel's effectiveness were limited to two discrete legal issues. Lacking such an assertion, waiver principles would generally operate to foreclose review of these averments, *see* 42 Pa.C.S. §§ 9543(a)(3), 9544(b), and the PCRA court's dismissal of these claims could be regarded as proper, assuming appropriate notice consistent with the provisions of Rule of Criminal Procedure 1509(C)(1).

In this respect, we note a significant distinction between our 1999 decision in *Williams* and the present case. In *Williams,* the same attorney served as trial and appellate counsel; as there was no intervening substitution of counsel, the post-conviction context was viewed as the appellant's first opportunity to raise claims of ineffective assistance on the part of trial counsel. *See id.* at 226–27 & n. 6, 732 A.2d at 1177 & n. 6. Here, however, substitute counsel was appointed for purposes of the direct appeal. It was therefore incumbent upon PCRA counsel to establish an appropriate framework for post-conviction review of claims not raised on direct appeal.

 As noted in *Williams,* former Section 9543(a)(3)(iii) of the PCRA, 42 Pa.C.S. § 9543(a)(3)(iii)(repealed), was frequently cited as a statutory source of authority permitting claims of ineffective assistance of counsel even in circumstances in which one or more post-verdict substitutions of counsel have occurred, where the petitioner also asserts the ineffectiveness of all prior counsel. *See Williams,* 557 Pa. at 226 n. 6, 732 A.2d at 1177 n. 6. Although the General Assembly has repealed Section 9543(a)(3)(iii), this Court has continued to review claims of ineffectiveness which are "layered" through a sufficient assertion of ineffectiveness of all prior counsel. *See, e.g., Commonwealth v. Marrero,* 561 Pa. 100, 103–04, 748 A.2d 202, 203–04 (2000). While we have not specifically undertaken to explain the basis for such review, we note that the substantive provisions of the PCRA are couched in terms of the reliability of the verdict, *see, e.g.,* 42 Pa.C.S. § 9543(a)(2)(ii), thus also implicating the process of direct review, and we have otherwise harmonized the PCRA and traditional *habeas corpus* review where necessary to implement constitutional guar-

antees while giving the greatest effect possible to the legislative intent that the PCRA constitute the "sole means" for obtaining collateral relief from a conviction or sentence, 42 Pa.C.S. § 9542. *See Commonwealth v. Chester,* 557 Pa. 358, 375–76, 733 A.2d 1242, 1251 (1999); *see also Commonwealth v. Lantzy,* 558 Pa. 214, 222–24, 736 A.2d 564, 569–70 (1999).

These and other of our recent decisions reflect, in large measure, an assessment of the balance struck by the General Assembly between the efficient administration of criminal laws and finality in the adjudicative process, and the ultimate assurance that the conviction and sentence were reliably imposed consistent with the defendant's constitutional rights.[3] Thus, on the one hand, we have recently rejected the argument that certain language from the PCRA bars the assertion of claims of error alleging constitutional violation and/or ineffective assistance of counsel relating to the penalty phase of a capital trial, *see Chester,* 557 Pa. at 375–76, 733 A.2d at 1251, aligned the prejudice standard of the PCRA with the constitutional standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *see Commonwealth v. Kimball,* 555 Pa. 299, 309, 724 A.2d 326, 331 (1999), confirmed a capital petitioner's rule-based entitlement to effective assistance of PCRA counsel on a first petition, *see Commonwealth v. Priovolos,* 552 Pa. 364, 368, 715 A.2d 420, 422 (1998), and

---

**3.** These are the same interests balanced by courts in the application of judicial error preservation rules. On the one hand, as stated by one commentator:

> Rules such as these serve critical purposes: the provision of adequate notice to adversaries (and the court) of the matters that are at issue; the allocation of decisions to the appropriate body; the promotion of focused consideration of particular questions at different times, when the pertinent evidence and argumentation can be mustered; and the avoidance of wasteful proceedings by requiring prompt consideration of issues upon whose resolution further matters (or the continuation of the proceeding at all) depend.

Daniel J. Meltzer, *State Court Forfeitures of Federal Rights,* HARV. L.REV. 1128, 1134–35 (1986). Such concerns are weighed against the provision of merits review as a means to ensure the integrity of the process and conformance with constitutional precepts. *See generally Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)(noting that "[o]rderly rules of procedure do not require sacrifice of the rules of fundamental justice").

enforced the PCRA courts' constitutional, statutory, and rule-based obligations with respect to the conduct of post-conviction hearings and the preparation of written opinions, *see Williams,* 557 Pa. at 224–25, 732 A.2d at 1176. On the other hand, we have upheld against constitutional challenge the PCRA's one-year filing limitation for PCRA petitions, *see Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638 (1998), and determined that the doctrine of relaxed waiver should no longer apply in the post-conviction setting, *see Commonwealth v. Albrecht,* 554 Pa. 31, 44–46, 720 A.2d 693, 700 (1998).

The practical effect of the legislative scheme as we have interpreted it is to channel claims for post-conviction relief through the PCRA, to ensure that the post-conviction review process remains open for review of certain fundamental claims implicating the reliability of the conviction and/or sentence, but to limit this opportunity in most cases to a single, counseled petition. The nature of this scheme places substantial responsibility upon PCRA counsel to properly identify claims implicating a right to relief and to present them in a form which would invoke merits review. Indeed, particularly in light of the time limitation now imposed under the PCRA, a substantial default by post-conviction counsel may ultimately foreclose merits review of a claim.

Certainly it is not unique to the Pennsylvania post-conviction context that counsel's defaults may impact upon the nature of review afforded to a client's claims. For example, the decision of the United States Supreme Court in *Strickland,* 466 U.S. at 668, 104 S.Ct. at 2052, firmly establishes that one seeking relief from a conviction or sentence based upon a claim of ineffective assistance of counsel bears the burden of establishing prejudice, *see id.* at 692, 104 S.Ct. at 2067; whereas, trial errors which have been adequately preserved and thus need not be presented through a claim of ineffective assistance would generally implicate a burden on the part of the government to establish that the errors were harmless. *See generally Commonwealth v. Howard,* 538 Pa. 86, 99–101, 645 A.2d 1300, 1307–08 (1994)(highlighting the distinction be-

tween the harmless error and prejudice standards).[4] While this Court has in special circumstances acted to ameliorate the adverse effect of PCRA counsel's deficient performance, *see, e.g., Commonwealth v. Spence,* 561 Pa. 344, 750 A.2d 303 (2000)(remanding, *per curiam,* with directions to permit the filing of an amended PCRA petition by substitute post-conviction counsel); *Commonwealth v. Saranchak,* 559 Pa. 111, 739 A.2d 162 (1999)(same), these cases represent the exception rather than the rule, as our general practice is to review claims as presented according to our established standards of review.

Concerning the manner in which claims of appellate counsel's ineffectiveness are to be developed, it should not escape the notice of post-conviction counsel that this Court was divided in *Marrero,* 561 Pa. at 100, 748 A.2d at 202. The majority found that a claim of ineffective assistance on the part of appellate counsel that was asserted generally and in a summary fashion in the appellant's brief in the statement of questions involved was sufficient to overcome an asserted waiver of the claim. *See Marrero,* 561 Pa. at 103–04 n. 1, 748 A.2d at 203–04 n. 1 (stating that "a common sense reading of the plain language ... can only result in the reasonable conclusion that [the][a]ppellant is asserting appellate counsel's ineffectiveness for failing to assert five claims of trial counsel's ineffectiveness"). Three Justices, however, took the position that, given the manner of its framing, including the lack of elaboration and specificity, the claim was waived, *see Marrero,* 561 Pa. at 104–06, 748 A.2d at 204–05 (Nigro, J., concurring); accordingly, those Justices would not have afforded merits review on the pertinent claims.

■ In light of the *Marrero* opinions, it is apparent that competent PCRA counsel must, in pleadings and briefs, under-

---

4. Although the justification for this paradigm is not specifically articulated, *Strickland* strongly emphasizes the central constitutional role served by trial counsel and the corresponding need for deference in the review of counsel's performance. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (stating that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

take to develop, to the extent possible, the nature of the claim asserted with respect to each individual facet of a layered ineffectiveness claim, including that which relates to appellate counsel. While a majority of this Court would presently continue to allow a degree of latitude in this regard, the distinction between sufficient and insufficient claims will likely undergo further development over time in the context of specific cases; [5] therefore, to ensure a petitioner's entitlement to merits review, it is critical that post-conviction counsel avoid arguments on the fringes of appropriate presentation.

■■■ Regardless of the ultimate construct devised to assess *arguments* concerning appellate counsel's effectiveness,

---

5. In his concurring opinion, Mr. Justice Castille criticizes affordance of any latitude in terms of the detail in description of appellate counsel's ineffectiveness in the post-conviction setting. We recognize, however, that the difficulty facing post-conviction counsel is that claims of appellate counsel's ineffectiveness are generally derivative claims, predicated on the failure to raise and preserve an asserted instance of trial error or ineffectiveness on the part of trial counsel. Therefore, a primary avenue of proving appellate counsel's lack of stewardship frequently lies in establishing the strength and obviousness of the underlying claim. Thus, it is not surprising that post-conviction appellate briefs often devote primary focus to development of the underlying claim. This may be particularly the case where the petitioner has not been afforded a post-conviction hearing and thus has not had the opportunity to develop the claim of appellate counsel's ineffectiveness by exploring on the record counsel's reasons for failing to raise and preserve the underlying claim.

Mr. Justice Castille also characterizes our discussion, above, as equivocal. It is merely our intention here, however, to caution capital litigants that they continue to face a divided Court concerning the level of detail required in pleadings and briefs. The view that this Court should deny review based solely upon deficiencies in post-conviction appellate briefs, although the briefs may themselves manifest ineffective assistance on the part of appellate post-conviction counsel for failing even to invoke the Court's review, is amply set forth in Justice Castille's concurring opinion.

Finally, we make no suggestion here that there should be a relaxation of the substantive Sixth Amendment standard. What we are addressing here is what is required to invoke substantive review. This includes, in the first instance, a post-conviction hearing (constituting the opportunity for the petitioner to prove his post-conviction claims), and, on appellate review, examination of the pleadings and proofs by this Court to determine whether a Sixth Amendment claim is established on the post-conviction record (or, where such a claim has been dismissed,

all Justices are aligned concerning the fundamental proposition that the PCRA requires a petitioner to *plead and prove* his claim, and, therefore, the dismissal of claims is appropriate where the pleadings are insufficient to state a claim for post-conviction relief. *See* Pa.R.Crim.P. 1509(C)(providing for dismissal of a capital PCRA petition where there are no material facts at issue, the petitioner is not entitled to relief as a matter of law, and no purpose would be served by any further proceeding). In the present case, since Williams' amended petition does not raise a challenge to the adequacy of his appellate counsel's performance in relation to primary claims, those claims that were not raised at the earliest opportunity (on direct appeal) would be deemed waived, *see* 42 Pa.C.S. § 9544, and the amended petition was thus vulnerable to dismissal for failure to state a claim in relation to such issues.

Nevertheless, having emphasized counsel's critical role in the post-conviction process, we conclude that affirmance of the PCRA court's disposition of the present petition is not appropriate in view of the absence of an adequate opinion, and as our rules provide one additional safeguard. Pursuant to Rule of Criminal Procedure 1509(C)(1), a PCRA court is obliged to provide a capital defendant with pre-dismissal notice of its reasons for dismissal, *see* Pa.R.Crim.P. 1509(C)(1), and the opportunity is thus provided for a defendant to seek leave to amend to cure any material defect in the petition, *see* Pa.R.Crim.P. 1509(C)(3)(b). *See generally* Pa.R.Crim.P. 1505(b) (prescribing that, when a petition is defective as originally filed, a PCRA court "shall order amendment of the petition, indicate the nature of the defects, and specify the time within which an amended petition shall be filed"); Pa.R.Crim.P. 1505(a) (providing that amendment of post-conviction petitions may be granted by a PCRA court "at any time," and "shall be freely allowed to achieve substantial justice").[6] Particularly in light of the legislative scheme chan-

whether the claim was adequately asserted and all procedural requirements for dismissal met, *see infra* ).

6. As of April 1, 2001, these rules are now reposited in the 900 series of the renumbered Rules of Criminal Procedure.

neling all forms of claims through the PCRA and limiting the opportunity for seeking post-conviction review to the one-year period after the judgment of sentence becomes final, *see* 42 Pa.C.S. § 9545, both PCRA courts and counsel must pay careful attention to their respective obligations under the rules. Where PCRA courts discern the potential for amendment, it is their obligation under Rule 1505(b) to specifically allow the opportunity; where dismissal is deemed the appropriate course, the court must obviously provide sufficiently specific reasons for the disposition such that the potential for amendment may be reasonably evaluated by counsel.[7] Upon receipt of either form of notice, counsel must undertake a careful review of the pleadings and other materials submitted to ensure that a sufficient offer has been made to warrant merits review. These procedures are afforded not only to protect the integrity of the process and the rights of a capital petitioner in the common pleas setting, but also to provide the essential predicate for appellate review of the post-conviction proceedings by this Court.

Here, the PCRA court did not identify the absence of any allegation of ineffective assistance on the part of appellate counsel as a reason for dismissal either in its pre-dismissal notice or in its opinion by incorporation of the Commonwealth's motion to dismiss. Therefore, the dismissal simply cannot be affirmed on such basis. Rather, the case will be returned to the PCRA court for disposition in accordance with our rules and decisional law.

The order of the PCRA court is vacated and the matter is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

Justices ZAPPALA, CAPPY, CASTILLE and NIGRO file separate concurring opinions.

7. The requirement for PCRA courts to direct amendments contained in Rule 1505(b) applies to petitions "as originally filed"; therefore, this particular subdivision, by its terms, would not be strictly applicable to the dismissal of a petition which already has been amended, as was the case here. However, the requirement for the PCRA court to provide reasons is embodied both in Rule 1505(b) and Rule 1509, the latter of which was directly applicable to the disposition of Williams' petition.

ZAPPALA, Justice, concurring.

Given our decision in *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999), and the Commonwealth's assent to Appellant's application requesting remand, I join the majority's decision to remand to the PCRA court as it improperly adopted the Commonwealth's motion to dismiss rather than issue a substantive opinion. I write separately, however, to express my view regarding the manner in which claims of appellate counsel's ineffectiveness are to be preserved and developed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.*

First, as the author of the Court's majority opinion in *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202 (2000), I point out that the opinion in that case was never intended as a guide to the bench and bar regarding the development of ineffectiveness of counsel claims, including appellate counsel, but merely expressed our view that the boilerplate assertion of all prior counsels' ineffectiveness was sufficient to overcome waiver. We did not set forth in detail how such claims should be developed pursuant to the PCRA. It is at this juncture that the Court is attempting to provide guidance concerning the development of such claims. I therefore set forth my view on such matter.

Pursuant to the plain language of the Act, one seeking relief on the grounds of ineffective assistance of counsel must plead and prove by a preponderance of the evidence: (1) ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place, *id.* at Section 9543(A)(2)(ii); (2) that the allegation of error has not been previously litigated or waived, *id.* at Section 9543(A)(3); and, (3) that the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel. *Id.* at Section 9543(A)(4).[1]

---

1. As in any claim under the PCRA, a petitioner must also plead and prove the general requirements under Section 9543(A) regarding the

The petitioner must further satisfy the well-established three-part test demonstrating ineffectiveness of counsel: (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her conduct; and (3) that the petitioner was prejudiced by counsel's performance, i.e., that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Holloway,* 559 Pa. 258, 739 A.2d 1039 (1999).

With regard to how a petitioner is to present a claim of ineffective counsel in their petition for post-conviction relief, I believe the various opinions commingle the terms "pleading" and "proving" and appear to require that a petitioner prove his or her case in the pleadings in order for the court to address the claims on the merits. I believe that this effectively turns the statute on its head and renders a PCRA proceeding merely a paper shuffle where the petitioner is denied the opportunity to demonstrate eligibility for relief. This is not consistent with the statutory language of the Act or the criminal rules applicable to PCRA proceedings.

Section 9543 of the Act, where the "plead and prove" language originates, refers solely to the "Eligibility for [post-conviction] relief." The section does not speak to any prerequisites a petitioner must satisfy in order to have a claim *considered* by the court.[2] As long as the petitioner has set

criminal status of the petitioner at the time relief is sought. Further, the petition must be timely filed in accordance with Section 9545(B)(1).

2. In fact, the trial court has the authority to order amendment of a defective PCRA petition. Pennsylvania Rule of Criminal Procedure 1505(b) provides that "when a petition for post-conviction collateral relief is defective as originally filed, the judge *shall* order amendment of the petition, indicate the nature of the defects, and specify the time within which an amended petition shall be filed." Pa.R.Cr.P. 1505(b) (emphasis added). The rule further states that "if the order directing amendment is not complied with, the petition may be dismissed without a hearing." The *Comment* to the Rule states that the term "defective"

is intended to include petitions that are inadequate, insufficient, or irregular for any reason; for example, petitions that lack particularity; petitions that do not comply substantially with Rule 1502 (Content of Petition for Post Conviction Collateral Relief; Request for Discovery); petitions that appear to be patently frivolous; petitions

forth "each ground relied upon in support of the relief requested," as set forth in Pa.R.Cr.P. 1502(b) (Content of Petition for Post Conviction Collateral Relief; Request for Discovery), and attaches any relevant affidavits or other evidence in support of the grounds for relief where required in accordance with Pa.R.Cr.P. 1502(d), the petitioner is entitled to review of the claim by the trial court. This is not to say that our Court is precluded from dismissing a claim on appeal from denial of PCRA relief on the grounds that the petitioner failed to adequately develop an argument in support thereof (e.g., failed to demonstrate that the claim was not waived or that counsel did not have a reasonable basis for his conduct). This principle, however, is not unique to PCRA petitions, but may arise in appeals of any context where an appellant fails to support a claim with authority or sufficient argument.

In determining whether a petitioner is entitled to relief on a particular claim, the trial court must initially consider whether an evidentiary hearing is necessary. Pursuant to Pennsylvania Rules of Criminal Procedure 1507 (Disposition Without Hearing) and 1509 (Procedures for Petitions in Death Penalty Cases; Hearing; Disposition), a petition may be dismissed without a hearing if the judge is satisfied that there are no genuine issues concerning any material fact and that the petitioner is not entitled to post-conviction collateral relief. Stated differently, where the facts alleged, if proven, would not entitle a petitioner to relief, then an evidentiary hearing is not required.

Finally, recognizing that this case involves layered ineffectiveness claims, neither the statute nor the criminal rules require a petitioner to attach affidavits from all prior counsel to support an ineffectiveness claim. In order to be entitled to relief, a petitioner must explain why "the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S. § 9543(A)(4).

> that do not allege acts which would support relief; petitions that raise issues the defendant did not preserve properly or were finally determined at prior proceedings.

Along this vein, I note my disagreement with Mr. Justice Castille's approach regarding a petitioner's demonstration of appellate counsel's ineffectiveness. He notes that

> To prevail on such a claim, the petitioner must, at a minimum, not only identify a waived issue of apparent merit, but also explain why he believes the claim he now faults appellate counsel for failing to raise must be deemed clearly stronger than the claims counsel actually raised, such that counsel was constitutionally obligated to perceive and raise them.

Concurring and dissenting opinion at 782 A.2d at 532. Under the jurisprudence of this Court, this is simply not required. See *Commonwealth v. Townsell,* 474 Pa. 563, 379 A.2d 98 (1977) (holding that a substantial matter of arguable merit is not to be abandoned on the ground that it might de-emphasize another issue). Accord *Commonwealth v. Yocham,* 483 Pa. 478, 397 A.2d 766 (1979).

Accordingly, I concur in the result reached by the majority.

CAPPY, Justice, concurring.

I join in the majority opinion. I find that the majority opinion provides a strong framework for PCRA proceedings, particularly in the details of how to plead and prove claims involving layered ineffectiveness and waiver. Counsel should be mindful of this framework, as it will be applied to all petitions filed after the filing date of this opinion. Hereafter, this court will enforce the plain language of the PCRA and only those pleadings which conform to the requirements of the PCRA will be entitled to full review on the merits. I recognize that not all of the principles articulated in the majority opinion were necessary to the disposition of the matter *sub judice.* I nonetheless wholeheartedly endorse the majority's attempt to provide a roadmap on the thorny issues arising in PCRA litigation. There are times when it is necessary to craft an opinion of broader scope in order to provide needed guidance on important issues of law. I believe that this is one of these occasions.

CASTILLE, Justice, concurring.

For the reasons stated in my Concurring Opinion in *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999), I agree that this appeal must be remanded to the PCRA court to prepare an opinion reflecting its independent consideration of the issues raised in the amended PCRA petition and for whatever further proceedings, if any, the PCRA court may deem necessary to accomplish that task. Following the determination that *Williams* requires remand, the majority goes on to address *sua sponte* issues it perceives concerning the performance of PCRA counsel in cases, such as this one, where there are "layered" claims of counsel ineffectiveness, including claims that direct appeal counsel was ineffective. The majority explains that this *dicta* is an exercise of this Court's supervisory authority over the PCRA process.

The supervisory *dicta* is no doubt motivated by this Court's recent experience with "layered" claims of ineffectiveness raised in PCRA appeals. Although Sixth Amendment claims such as these are generally cognizable under the PCRA, they are frequently stated in this Court, and in the lower courts, only in the baldest of terms. The undeveloped claims inevitably fail. As the majority notes, in this Court's recent opinion in *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202 (2000), there was a sharp disagreement as to whether the non-development of a layered claim of ineffectiveness should result in a conclusion that the claim is either waived and unreviewable or is meritless. *Compare Marrero* Majority Opinion by Zappala, J. (listing layered ineffectiveness claims in statement of questions presented, while failing to argue claims in body of brief, is sufficient to avoid waiver) *with Marrero* Concurring Opinion by Nigro, J. (since *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998) made clear that relaxed waiver is inappropriate in capital PCRA appeals, and appellant's layered claims of appellate counsel ineffectiveness were supported by "absolutely no argument" in brief, claims were waived under this Court's precedents).

The majority here is equivocal with regard to *Marrero*, stating on the one hand that PCRA counsel must undertake to

develop "each individual facet" of an ineffectiveness claim, including claims involving appellate counsel—something counsel did not do in *Marrero*—but then the majority immediately states on the other hand that this Court "would presently continue to allow a degree of latitude" with respect to what is required. The majority explains that the latitude it speaks of does not relax the substantive Sixth Amendment standard that governs actual merit review of all claims of ineffective assistance of counsel, but instead merely addresses what is required "to invoke substantive review." *See* Majority 782 A.2d at 525 n. 5.

I write separately for two reasons. First, I cannot join in the majority's approval of a "continuing degree of latitude" with respect to the development of layered ineffectiveness claims if, by that latitude, the majority means the latitude actually afforded by the *Marrero* majority. The waiver in *Marrero* was not hypertechnical or minor and the degree of "latitude" afforded was substantial; indeed, I continue to agree with Mr. Justice Nigro's analysis in his *Marrero* Concurring Opinion that the Majority Opinion amounted to a resurrection of the relaxed waiver rule which this Court has made clear, in *Albrecht* and its progeny, has no proper role in PCRA appeals. Although the majority here cites to both *Albrecht* and *Marrero* with apparent approval, I am not convinced that the two cases can logically co-exist. Since the only occasion for this *dicta* is the need to provide guidance in such matters, I would squarely address the inescapable tension between the cases, rather than perpetuate the confusion.

The appellant in *Marrero* claimed that his direct appeal counsel was ineffective for failing to claim that trial counsel was ineffective for failing to, *inter alia,* (1) inquire into the appellant's competence and (2) investigate and present mitigation witnesses. The Concurring Opinion in *Marrero* would not have discussed the merits of these two layered ineffectiveness claims because the attack on trial counsel's stewardship was waived, since new counsel obviously could have challenged trial counsel's stewardship on direct appeal, while the attack on appellate counsel's stewardship was not properly layered

and developed. In point of fact, the appellate counsel claims **were not developed at all.** They were merely listed in the statement of questions presented, while the appellant presented absolutely no supporting argument in the body of the brief, instead arguing only his distinct, underlying constitutional claims of trial counsel ineffectiveness. 561 Pa. at 104–06, 748 A.2d at 204–05.

The *Marrero* majority responded to the Concurring Opinion only in a footnote, and addressed only the allegation that the ineffectiveness claims were not properly "layered." The majority opined that the appellant's allegation that direct appeal counsel was ineffective in his statement of questions was sufficient to "properly 'layer'" his claims. The majority did not address the fact that the appellate counsel ineffectiveness claims were not at all **developed.** The "proper layering" in the statement of questions alone was viewed as sufficient to render the non-argued claims reviewable on the merits. Certainly, that is the interpretation of the *Marrero* majority opinion offered by Mr. Justice Zappala, its author, in his Concurring Opinion in this case. *See* Concurring Opinion, Zappala, J., 782 A.2d at 527 (*Marrero* was never intended as a guide for developing ineffectiveness claims, "but merely expressed our view that the boilerplate assertion of all prior counsels' ineffectiveness was sufficient to overcome waiver").

The brief majority opinion in *Marrero*, which cited no cases, then held that the layered claims failed on the merits because the appellant's refusal to cooperate with his trial counsel or to assist in his defense precluded trial counsel from pursuing these claims. 561 Pa. at 104, 748 A.2d at 204. The majority never specifically discussed appellate counsel's stewardship. Presumably implicit in its holding was a recognition of the settled rule that counsel—including appellate counsel—can never be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Peterkin,* 538 Pa. 455, 469, 649 A.2d 121, 128 (1994), *cert. denied, Peterkin v. Pennsylvania,* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995) ("Appellant's claim [of trial counsel ineffectiveness at the penalty phase] is meritless and appellate counsel cannot be deemed ineffective

for failing to raise a meritless claim"); *Commonwealth v. Tarver*, 491 Pa. 253, 255, 420 A.2d 438, 438 (1980) ("It is well-settled that counsel may not be deemed ineffective for failing to raise a meritless claim").

In my view, reaching the merits of a completely undeveloped, non-argued claim such as the "boilerplate" claims of appellate counsel ineffectiveness identified, but never actually argued in *Marrero*, does not merely afford "latitude" to a capital defendant, but is a resurrection of relaxed waiver. The requirement that parties actually argue and develop the distinct legal claims they merely identify is not a "hypertechnicality": it is an indispensable necessity for effective appellate review. The Rules of Appellate Procedure direct that a party must not only include its issues on appeal in the Statement of Questions Involved, Pa.R.A.P. 2111, 2116, but must also provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119. The reasons for such a bedrock requirement are self-evident. This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter. The Court is left to guess at the actual complaint that is intended by the party. The practice of fashioning arguments for a party is also unfair to the would-be responding party, which will only learn upon receipt of the Opinion that the Court perceived the argument, and thus will have been deprived of an opportunity to respond. The result is a decision on the issue without the benefit of helpful advocacy from either side. This is not a model for sound decision-making.

Furthermore, as a general matter, making and then rejecting the argument for a capital defendant does him no favor since actual litigation of a complaint, rather than a holding of waiver, precludes future litigation of the issue under the PCRA **under any theory**. *See, e.g., Williams*, 557 Pa. at 238, 732 A.2d at 1183. In addition, the practice may be unfair to future litigants, who may identify stronger arguments on the issue than those the Court perceived on its own, but who will

be bound by the precedent previously established without the benefit of adversarial presentations.

It is thus not surprising that it is settled as a general proposition that undeveloped claims are deemed waived and unreviewable on appeal. *See, e.g., Commonwealth v. Jackson,* 494 Pa. 457, 459 n. 1, 431 A.2d 944, 945 n. 1 (1981) (where ineffectiveness claim was listed in statement of questions, but not addressed in argument section of brief, claim was waived; waiver is warranted because "Appellant has failed to guide this Court as to the facts or applicable law"). *See also Marrero,* 561 Pa. at 105–06, 748 A.2d at 204–05 (Nigro, J., Concurring) (same); *Williams,* 557 Pa. at 223, 732 A.2d at 1175 (recognizing "unavailability of relief based upon undeveloped claims for which insufficient arguments are presented on appeal"); *Commonwealth v. LaCava,* 542 Pa. 160, 176 n. 9, 666 A.2d 221, 229 n. 9 (1995) (claim mentioned in statement of questions in direct capital appeal, but not mentioned again or developed in argument section of brief is waived); *Commonwealth v. Ragan,* 538 Pa. 2, 37, 645 A.2d 811, 828 (1994) (boilerplate allegation provides no basis for relief).

Application of this settled proposition of appellate jurisprudence has been complicated in capital cases, however, by the existence of this Court's relaxed waiver rule. This Court has invoked the relaxed waiver rule to reach claims on direct capital appeals that were inadequately developed and otherwise would not have been reviewable under this Court's procedural practices. *See, e.g., Commonwealth v. Mason,* 559 Pa. 500, 518 n. 9, 741 A.2d 708, 718 n. 9 (1999) (although appellant failed to adequately develop argument, citing no case law or other legal support for his bald assertion, Court addressed the otherwise waived argument under relaxed waiver rule applicable on capital case direct appeals); *Commonwealth v. Spotz,* 552 Pa. 499, 510 n. 5, 716 A.2d 580, 585 n. 5 (1998) (same).[1] But, as the majority recognizes, this Court

---

1. It should be noted that the relaxed waiver rule is not absolute. Relaxed waiver encompasses only "significant" issues that were "technically" waived, and that could be resolved on the basis of the record generated. *E.g., Commonwealth v. Billa,* 521 Pa. 168, 181, 555 A.2d

has recently made clear that the relaxed waiver rule has no place in the PCRA setting. *See, e.g., Commonwealth v. Kemp,* 562 Pa. 154, 169, 753 A.2d 1278, 1285 (2000); *Commonwealth v. Albrecht,* 554 Pa. at 44, 720 A.2d at 700.

The majority opinion in *Marrero* never employed the phrase "relaxed waiver" nor did it cite to, or purport to overrule or limit, *Albrecht* and its progeny. Nevertheless, it is difficult to see how the majority could reach the merits of the boilerplate layered Sixth Amendment claims presented without, in fact, "relaxing" the requirement that legal claims be adequately

835, 842 (1989). This Court has declined to apply the rule in many instances, often involving situations where the failure to raise a claim below might have fallen within the realm of defense trial strategy, or when the absence of a contemporaneous objection made it difficult to resolve the issue on the limited record presented. *See, e.g., Commonwealth v. Gribble,* 550 Pa. 62, 79–80, 703 A.2d 426, 434–35 (1997) (suppression issue waived where defendant withdrew pre-trial motion to suppress, thereby depriving Commonwealth of opportunity to meet burden of proving that evidence was lawfully seized); *Commonwealth v. Wallace,* 522 Pa. 297, 309, 561 A.2d 719, 725 (1989) (claim that court erred in failing to issue cautionary instruction waived where court offered to give charge and counsel failed to "take a stand" on issue and failed to object when cautionary charge was not forthcoming); *Commonwealth v. Peterkin,* 511 Pa. at 310–11, 513 A.2d at 378 (claim that two prospective jurors were improperly excluded for cause waived where trial defense counsel indicated he had no objection to challenges for cause); *Commonwealth v. Szuchon,* 506 Pa. 228, 254–55, 484 A.2d 1365, 1379–80 (1984) (claim that prospective jurors were improperly excluded waived where counsel's decision not to raise claim or attempt to rehabilitate jurors must be viewed as tactical and where that decision resulted in record that made it difficult to resolve claim). Furthermore, this Court has expressly warned that the doctrine is not to be used, and abused, as a litigation tool:

This Court does not countenance trial counsel intentionally sitting by silently at trial only later to complain of trial errors on appeal after an unfavorable verdict. That a matter is a death penalty in no way relieves trial counsel of the duty to raise appropriate contemporaneous objections at trial to allow the trial court to cure any alleged error as well as preserve issues for appellate review.

*Commonwealth v. Gibson,* 547 Pa. 71, 88–89 n. 17, 688 A.2d 1152, 1161 n. 17 (1997). *See also Commonwealth v. O'Donnell,* 559 Pa. 320, 331, 740 A.2d 198, 204 (1999) (relaxed waiver "was never meant to serve as an invitation to appellate counsel to appear before the Court carte blanche and expect that we will resolve a litany of newly developed challenges not raised or objected to before the lower court"). Whether an otherwise waived claim would be reviewed on the merits depends upon the nature of the particular claim at issue, the waiver at issue, and the record.

articulated to the Court. I cannot agree with any suggestion in the present majority opinion that this Court should employ this type of "latitude" in assessing layered claims of ineffectiveness. I certainly cannot agree with the suggestion in Justice Zappala's concurrence that boilerplate statements in the statement of questions presented, but undeveloped in the brief itself, make for reviewable constitutional claims. Consistently with *Albrecht,* this Court should make clear that a failure to assert and argue a claim results in its waiver.

The actual scope of the majority's promised continuing latitude is impossible to assess since its observations are *dicta* and, thus, there is no judgment by which to measure the actual effect of the would-be rule. It may be that the majority does not intend to go so far as *Marrero* went. In this regard, I would note that I have no quarrel with this Court's affording a degree of latitude in reviewing the pleadings in capital cases, or in **all** appellate cases for that matter. Unlike questions of waiver arising from the terms of the PCRA, or the substantive standard governing ineffectiveness claims, which this Court has no power to relax, questions involving waivers arising from appellate jurisprudential concerns, such as our rules and precedents governing the sufficiency of arguments for purposes of appellate review, are properly for this Court to decide. In no case, however, capital or otherwise, would I agree that an utter failure even to mention, much less develop, a distinct constitutional claim in the body of the brief, as occurred in *Marrero,* is adequate to warrant review on the merits.

My second reason for writing separately is to address the actual Sixth Amendment standards that govern substantive review of layered claims of ineffectiveness, and particularly claims that previous appellate counsel was ineffective. I address this point because these standards are too often simply ignored by subsequent counsel in favor of boilerplate "layerings" of ineffectiveness. Acquaintance with the relevant substantive standards is essential if PCRA petitioners hope to have any prospect of actually prevailing on the merits of such claims, as opposed to their relying upon relaxed waiver to

have the undeveloped claims reviewed but, inevitably, rejected.

This case is a convenient vehicle to discuss the substantive contours of claims of appellate counsel ineffectiveness. Appellant was represented on direct appeal by new counsel, Norris E. Gelman, Esquire, an experienced capital appellate lawyer. Mr. Gelman raised nine claims of trial counsel ineffectiveness, involving both the guilt and the penalty phases of trial. *See Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716 (1992). Because appellant was represented by new counsel on appeal, any additional claim of trial counsel ineffectiveness, as well as any preserved claim of trial court error, was also available to appellant on that appeal. Accordingly, under the express terms of the PCRA, any claim of trial court error or trial counsel ineffectiveness not raised on that appeal is now waived and not cognizable. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544(b); *Albrecht*, 554 Pa. at 45, 720 A.2d at 700 ("very terms" of PCRA "exclude[ ] waived issues from the class of cognizable PCRA claims"). As the majority notes, the counseled appellant here submitted an amended PCRA petition, which raised numerous additional claims of trial counsel ineffectiveness. However, in only two instances did the amended petition even aver that direct appeal counsel was ineffective for failing to raise the claim of trial counsel ineffectiveness.

The PCRA makes clear that otherwise cognizable claims, if waived, are unavailable for review. *See* 42 Pa.C.S. §§ 9543(a), 9544(b). Recognizing the statutory waiver, PCRA petitioners such as appellant here routinely take waived claims and argue them under the rubric of ineffective assistance of counsel, alleging however many "layers" of ineffectiveness as are necessary to convert the claim into a cognizable one. But I believe it is absolutely essential to recognize that the underlying and unreviewable (because waived) claim is distinct from the reviewable ineffectiveness (or layered ineffectiveness) version of the claim. Moreover, each claim of counsel ineffectiveness, no matter what "layer" of representation is at issue, itself poses a distinct, substantive constitutional question-assuming, of course, that there was a constitutional right to

counsel at the layer of representation at issue. *See Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967) (ineffectiveness review involves "an examination of counsel's stewardship **of the now challenged proceedings** in light of the available alternatives") (emphasis added).

An ineffective assistance of counsel claim is, in essence, a claim of constitutional malpractice, *i.e.,* a claim that counsel was so incompetent as to have effectively deprived the defendant of his or her Sixth Amendment right to counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that defendant was prejudiced by the deficient performance).[2] It is the very constitutional dimension of the claim that no doubt led the General Assembly to include it as one of the enumerated, cognizable claims under the PCRA. In light of the waiver provisions of the PCRA, ineffectiveness claims are the most common claims raised in PCRA petitions.

An allegation of ineffectiveness is a serious matter not only because of the crucial importance of the constitutional right to counsel in the criminal justice system, but also because the very allegation is a grave one to level at an attorney. The underlying non-cognizable claim, which often is not itself even of constitutional dimension (for example, many evidentiary claims or claims regarding jury instructions), is relevant **only** as it bears upon the Sixth Amendment analysis. *See Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 2586–87, 91 L.Ed.2d 305 (1986) (constitutional ineffectiveness standard under *Strickland v. Washington* "differs significantly from the elements of proof applicable to" Fourth Amendment claim; thus, while meritorious Fourth Amendment issue is essential

---

**2.** In *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), this Court recognized that *Strickland's* two-part performance and prejudice test was the same test for ineffectiveness as under our Constitution. We have come to characterize the coextensive test as a tripartite one, by dividing the performance element into two distinct parts, *i.e.,* arguable merit and lack of reasonable basis.

to Sixth Amendment claim of ineffectiveness arising from failure to pursue Fourth Amendment issue, meritorious Fourth Amendment claim alone does not prove ineffectiveness; *Strickland* "gross incompetence" test must be met to prevail on Sixth Amendment claim); *Commonwealth v. Green*, 551 Pa. 88, 92 n. 4, 709 A.2d 382, 383, n. 4 (1998) (analysis of abandoned claim "is undertaken solely for the purpose of resolving questions of ineffective representation"), *quoting Commonwealth v. Hubbard*, 472 Pa. 259, 278, 372 A.2d 687, 696 (1977); *Senk v. Zimmerman*, 886 F.2d 611, 614 (3d Cir.1989), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 772 (1990) (ineffectiveness claims are concerned with defense attorney's performance; underlying issue is only "indirectly implicate[d]").

A claim of ineffective assistance does not lose its distinct constitutional nature merely because the stewardship of direct appeal counsel is at issue. The United States Supreme Court—the final word on matters affecting the Sixth Amendment—has specifically recognized that appellate counsel may be deemed ineffective only if the defendant can actually **prove** ineffectiveness under the *Strickland* standard. *See Smith v. Robbins*, 528 U.S. 259, 289, 120 S.Ct. 746, 766, 145 L.Ed.2d 756 (2000) (petitioner "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel"). Claims involving appellate counsel ineffectiveness, moreover, necessarily involve concerns unique to appellate practice. No appellate counsel is constitutionally obliged to raise any and all possible claims on appeal. Arguably meritorious claims may be omitted in favor of claims which, in appellate counsel's judgment, offer a greater prospect of securing relief. *See Jones v. Barnes*, 463 U.S. 745, 750–54, 103 S.Ct. 3308, 3312–14, 77 L.Ed.2d 987 (1983). "[A]ppellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins, supra*, at 288, 120 S.Ct. at 765. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of

incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986), *quoting Jones,* 463 U.S. at 751–52, 103 S.Ct. at 3312–13. *See also Buehl v. Vaughn,* 166 F.3d 163, 174 (3d Cir.1999) ("One element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise.").

By being reasonably selective, counsel ensures that better claims are not diluted in a brief indiscriminately raising every possible claim. *See Jones, supra* at 752, 103 S.Ct. at 3313 ("Legal contentions, like the currency, depreciate through over-issue."), *quoting,* Jackson, *Advocacy Before the Supreme Court,* 25 Temple L.Q. 115, 119 (1951); *see also Commonwealth v. Ellis,* 534 Pa. 176, 183, 626 A.2d 1137, 1140–41 (1993) (" 'Appellate advocacy is measured by effectiveness, not loquaciousness.' "), *quoting* R. Aldisert, *The Appellate Bar: Professional Competence and Professional Responsibility—A View From the Jaundiced Eye of One Appellate Judge,* 11 Cap. U.L.Rev. 445, 458 (1982). An effective appellate advocate takes seriously the implication of Justice Jackson's admonition in a related context: "He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen,* 344 U.S. 443, 537, 73 S.Ct. 397, 425, 97 L.Ed. 469 (1953) (Jackson, J., concurring in result). In sum, although it is "possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim, ... it is difficult to demonstrate that counsel was incompetent." *Robbins,* 528 U.S. at 288, 120 S.Ct. at 765.

In light of what is necessary to prevail upon a claim of appellate counsel ineffectiveness, PCRA counsel's task is clear. Counsel should be prepared not only to identify a waived issue of apparent merit, but also to explain why the claim appellate counsel is faulted for failing to raise was, at the time appellate counsel was acting, clearly stronger than the claims counsel actually raised, such that counsel was constitutionally obliged to perceive and raise it. *See Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of

effective assistance of counsel be overcome"), *quoted with approval in Robbins, supra.*

Mr. Justice Zappala's Concurring Opinion disputes whether a petitioner needs to show that the foregone claim is stronger than the ones pursued on appeal in order to demonstrate appellate counsel ineffectiveness. Justice Zappala argues that the jurisprudence of this Court is otherwise, citing *Commonwealth v. Townsell,* 474 Pa. 563, 379 A.2d 98 (1977) and *Commonwealth v. Yocham,* 483 Pa. 478, 397 A.2d 766 (1979). Both of those cases pre-date *Strickland* and *Commonwealth v. Pierce,* which recognized that the test for ineffective assistance is the same under the Pennsylvania Constitution as under *Strickland.* As the discussion above demonstrates, the U.S. Supreme Court has explicitly stated that when a defendant claims that appellate counsel was ineffective for failing to raise a particular claim, the first part of the *Strickland* test requires a showing that the issue not raised was "clearly stronger than the issues that counsel did present." *Robbins,* 528 U.S. at 288, 120 S.Ct. at 766. To the extent that *Townsell* and *Yocham* suggest a different, *per se* test, they are simply no longer good law. It would be perilous indeed for petitioners to rely on such cases without attending to the binding developments in the law since they were decided.[3]

NIGRO, Justice, concurring.

I join the majority opinion but write separately only to clarify my position in *Commonwealth v. Marrero,* 561 Pa. 100, 748 A.2d 202 (2000), which the majority relies upon in reaching its conclusion on how claims of appellate counsel's ineffectiveness are to be developed in PCRA capital cases. In *Marrero,* I found the appellant's ineffectiveness claims were waived in light of the fact that the appellant merely added a boilerplate claim of appellate counsel's ineffectiveness in his questions presented for review section. The appellant in *Marrero* never mentioned, much less discussed, his claim of appellate coun-

---

3. I offer no opinion on the majority's additional *dicta* concerning the PCRA court's obligations under the Rules of Criminal Procedure, since there is no issue before us in that regard.

sel's ineffectiveness in the discussion section of his brief. In my view, in order to avoid a finding of waiver, the appellant's discussion section must not only address each prong of the ineffectiveness standard as it relates to trial counsel but must, at the very least, include a properly-layered assertion that all prior appellate counsel were ineffective for failing to raise trial counsel's ineffectiveness.