J-A09017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER BLACK | |
| Appellant | No. 1282 MDA 2015 |

Appeal from the Judgment of Sentence June 25, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-SA-0000026-2015

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED MAY 23, 2016**

Christopher Black ("Appellant") appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas, following his bench trial convictions for failing to properly confine his dog and harboring a dangerous animal.[1]  He also appeals the court's order entered on July 17, 2015, which granted the Commonwealth's motion and imposed restitution in favor of the victim of the dog bite.  We affirm Appellant's convictions and original judgment of sentence but vacate the order amending the sentence to include restitution.

The trial court set forth the relevant facts of this appeal as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 3 Pa.C.S. §§ 459-305 and 459-502-A, respectively.

[O]n October 9, 2014…, a]t approximately 3:00 p.m., Jennifer Dussinger [("Victim")] was jogging by herself along Dusty Lane. Dusty Lane is a private lane, which has a few residences and two businesses, at either end of the lane. Other than the sign at the entrance to the road that [Victim] never reached, and the small "POSTED" sign in the weeds, there were no clear markings that Dusty Lane was a private lane despite [Appellant's] claims to the contrary.

Regardless, [Victim] observed no signs advising her that she was entering private property when she followed the short foot-worn trail that connected Dewey Lane to Dusty Lane, nor did she observe any signs as she approached [Appellant's] property. Assuming *arguendo* that the small "private property" sign was present on the day of the attack, and that [Victim] observed it, she was running along the opposite side of the road and would have had no reason to believe she was encroaching on private land.

As [Victim] was running past [Appellant's] driveway, Thor[, Appellant's dog,] unexpectedly burst through [Appellant's] electric fence, crossed the road and lunged at [Victim], biting her left arm in two locations and causing her to fall in the burrs and brambles on the tree-lined side of the road.  The assertions by [Appellant] and his wife that [Victim] must have been running on their yard were not credible. Contrary to their claim that a cement truck parked in the road forced [Victim] to run on their front yard, we find more credible [Victim's] testimony that she was approximately 50 yards from the cement truck. Because the truck had no connection with [Appellant] or his property, it makes sense that it would park closer to the neighboring business than to [Appellant's] property.

When [Appellant] and his wife heard the commotion (which was the attack and not the mere barking - something to which the family had perhaps grown deaf), they looked up to see the victim falling on the other side of the road. Given the relative size and strength of the victim and dog, had the victim been in the [Appellant's] yard or even on that side of the road when she was attacked, she would have fallen immediately to the ground, nowhere

near the opposite side of the road. We do not know Thor's breed, but the photographs and the testimony of the witnesses provided ample evidence that a slight runner like [Victim] was overmatched. Thor and his companion Storm were aptly named.

*     *     *

In addition, the Commonwealth offered the testimony of two other runners who were nearly bitten by [Appellant's] dogs. Melanie Berra testified that "the last time" she ran on Dusty Lane, [Appellant's] dogs not only broke through the electric fence but also pulled their chains out of the ground, coming within ten feet of Ms. Berra and a friend before the owners "called them off." In that same time frame, a large dog bolted out of [Appellant's] house and ran at Steve Madrak in an "extremely aggressive" manner before a woman, presumably [Appellant's] wife, grabbed the dog and apologized. But for the last-second actions of the dogs' caretakers, both witnesses would have been victims.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed December 1, 2015 ("Trial Court Opinion"), at 3-4, 7 (citations to the record omitted).

On October 9, 2014, two citations were issued against Appellant, one for failing to properly confine his dog, and one for harboring a dangerous animal. On December 15, 2014, Appellant entered into a negotiated guilty plea in which he pled guilty to harboring a dangerous dog in exchange for the Commonwealth's agreement to drop the other charge against him. Appellant subsequently withdrew his guilty plea and, upon motion of the

Commonwealth, the court reinstated his citation for failing to keep the dog confined.[2, 3]

On June 23, 2015, the court conducted a bench trial. On June 25, 2015, after reviewing counsel's legal memoranda on willful trespass, the court convicted Appellant of the aforementioned crimes and sentenced him to the costs of prosecution and two $300.00 fines, one for each offense. On July 17, 2015, upon motion of the Commonwealth, the court amended the sentence to include an order that Appellant pay $255.57 in restitution to Victim.

On July 24, 2015, Appellant timely filed a notice of appeal. On July 28, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied on August 18, 2015.

Appellant raises the following issues for our review:

> 1. [WHETHER] THE [TRIAL] COURT ERRED IN CONCLUDING THAT [VICTIM] WAS NOT A WILLFUL TRESPASSER ON THE REAL PROPERTY OF APPELLANT[?]
>
> 2. [WHETHER] THE [TRIAL] COURT ERRED IN CONCLUDING THAT APPELLANT WAS GUILTY OF

---

[2] The Commonwealth requested the court reinstate the citation at the hearing on June 23, 2015, and Appellant did not object. The court officially reinstated the citation on July 29, 2015.

[3] Pursuant to his negotiated guilty plea, Appellant was to pay $255.57 restitution to Victim. However, after Appellant withdrew his guilty plea, the court failed to impose restitution at the time of sentencing.

VIOLATING 3 P.S. [§] 459-305 (CONFINEMENT OF DOGS)[?]

3. [WHETHER] THE [TRIAL] COURT ERRED IN CONCLUDING THAT APPELLANT WAS GUILTY OF VIOLATING 3 P.S. [§] 459-502A (HARBORING A DANGEROUS DOG)[?]

4. [WHETHER] THE [TRIAL] COURT ERRED IN AMENDING THE JUNE 25, 2015 SENTENCING ORDER TO ADD RESTITUTION TO THE AMOUNT OWED BY APPELLANT WITHOUT PROVIDING NOTICE OR OPPORTUNITY TO APPELLANT OR HIS COUNSEL TO RESPOND TO THE DISTRICT ATTORNEY'S MOTION TO AMEND RESTITUTION[?]

Appellant's Brief at 4.

In his second and third issues,[4] Appellant challenges the sufficiency of the evidence for his convictions. Appellant argues that the testimony in the case failed to establish that the dog left Appellant's property, that the dog was not confined within his yard, or that Appellant was not exercising reasonable control over the dog when the attack occurred. He claims the other witnesses who testified that the dog nearly attacked them referred to an event that occurred before Appellant owned Thor or installed the electric fence. Further, he argues his dog is not dangerous but was provoked by the cement truck at the time of the attack.

Initially, we must determine whether Appellant has waived his challenge to the sufficiency of the evidence.

_____

[4] For purposes of disposition, we shall address Appellant's second and third issues first.

The pertinent Rule of Appellate Procedure provides, in relevant part:

> **Rule 2119. Argument**
>
> **(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.
>
> **(b) Citations of authorities.** Citations of authorities in briefs shall be in accordance with Pa.R.A.P. 126 governing citations of authorities.

Pa.R.A.P. 2119.

Further,

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. ***Commonwealth v. Williams***, 782 A.2d 517, 532 ([Pa.]2001) (Castille, J., concurring). To do so places the Court in the conflicting roles of advocate and neutral arbiter. ***Id.*** When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. ***Commonwealth v. Luktisch***, 680 A.2d 877, 879 (Pa.Super.1996).

***In re S.T.S., Jr.***, 76 A.3d 24, 42 (Pa.Super.2013).

Here, Appellant fails to cite any legal authority regarding the sufficiency of the evidence in his brief. Therefore, his challenge to the sufficiency of the evidence for his convictions is waived.

Even if Appellant preserved his challenges to the sufficiency of the evidence, they are devoid of merit.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

Appellant was convicted under the following statutes:

**§ 459-305. Confinement and housing of dogs not part of a kennel**

**(a) Confinement and control.--**It shall be unlawful for the owner or keeper of any dog to fail to keep at all times the dog in any of the following manners:

(1) confined within the premises of the owner;

- 7 -

(2) firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured; or

(3) under the reasonable control of some person, or when engaged in lawful hunting, exhibition, performance events or field training.

3 Pa.C.S. § 459-305.

## § 459-502-A. Court proceedings, certificate of registration and disposition

**(a) Summary offense of harboring a dangerous dog.--**Any person who has been attacked by one or more dogs, or anyone on behalf of the person, a person whose domestic animal, dog or cat has been killed or injured without provocation, the State dog warden or the local police officer may file a complaint before a magisterial district judge, charging the owner or keeper of the a dog with harboring a dangerous dog. The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the magisterial district judge finds beyond a reasonable doubt that the following elements of the offense have been proven:

(1) The dog has done any of the following:

(i) Inflicted severe injury on a human being without provocation on public or private property.

(ii) Killed or inflicted severe injury on a domestic animal, dog or cat without provocation while off the owner's property.

(iii) Attacked a human being without provocation.

(iv) Been used in the commission of a crime.

(2) The dog has either or both of the following:

(i) A history of attacking human beings and/or domestic animals, dogs or cats without provocation.

(ii) A propensity to attack human beings and/or domestic animals, dogs or cats without provocation. A propensity to attack may be proven by a single

> incident of the conduct described in paragraph (1)(i), (ii), (iii) or (iv).
>
> (3) The defendant is the owner or keeper of the dog.

3 Pa.C.S. § 459-502-A.

The trial court, as the trier of fact, was free to believe all, part, or none of the evidence presented, and it chose to believe Victim's testimony as well as the testimony of the other joggers whom Thor nearly attacked. Specifically, the trial court found:

> What I find is basically that the dog crossed that line to the other side of the lane where he bit [V]ictim. [Appellant and his wife failed to] look up until there was a commotion. What they saw was the dog falling on [V]ictim on the other side of the lane. I do not believe that they saw the dog on their side of the electric fence or anywhere near their side of the lane. That dog had bolted, that dog had bitten, and that dog is dangerous.

Trial Court Opinion at 5 (quoting N.T, 6/23/2015, at 80). Victim's testimony supports the trial court's findings. Thus, Appellant violated section 459-305 by being the owner of the dog and failing to keep it secured or within its premises. He violated section 459-502-A by being the owner of the dog who inflicted serious bodily injury on another (on public or private property) when the dog had done so before or had a propensity to do so. Although the dog did not bite the other joggers, it broke free from chains to run after them and it frightened them, suggesting it had a propensity to attack without provocation.

Appellant also argues that his convictions should not stand because the victim was a willful trespasser on his property. *See* Appellant's Brief at 4, Issue 1.

The dog law provides, in relevant part:

### § 459-507-A. Construction of article

**(b) Abusive or unlawful conduct of victim.--**This article shall not apply if the threat, injury or damage was sustained by a person who, at the time, was committing a *willful trespass* or other tort *upon the premises* occupied by the owner of the dog, or was tormenting, abusing or assaulting the dog or has, in the past, been observed or reported to have tormented, abused or assaulted the dog, or was committing or attempting to commit a crime.

3 Pa.C.S. § 459-507-A (emphasis added).

We observe:

[W]e interpret the term "premises of the owner," to which a dog must be confined under 3 P.S. § 459–305(1), to be that portion of the owner's property which is within the owner's control, i.e. not open to the public. Consequently, any portion of an owner's property which is open to the public, in this case a right of way, is not within the owner's control and therefore not the owner's premises under the meaning of this section.

[Even if an a]ppellant still owns the land upon which the roadway lies, he has no control regarding who passes over the land to access the…homes served by the right of way. [T]o allow [the a]ppellant's dog to roam the roadway, which accesses…homes and may be traveled by an unsuspecting member of the public, would not allow the purpose of the Legislature to be met.

*Commonwealth v. Glumac*, 717 A.2d 572, 574 (Pa.Super.1998).

Construed in the light most favorable to the Commonwealth, the evidence demonstrates that Victim was not a willful trespasser, because she

was jogging on the road in front of Appellant's house when Thor bit her, and not on Appellant's premises.

In his final issue, Appellant argues the trial court erred in granting the Commonwealth's motion to amend the sentence to include restitution. We agree.

The following statute governs restitution:

> **§ 1106. Restitution for injuries to person or property**
>
> **(a) General rule.--**Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> \* \* \*
>
> **(c) Mandatory restitution.--**
>
> \* \* \*
>
> (2) ***At the time of sentencing the court shall specify the amount and method of restitution***. In determining the amount and method of restitution, the court:
>
> > (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.
> >
> > (ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.
> >
> > (iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

(iv) Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

(3) *The court may, at any time* or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, *alter or amend any order of restitution made pursuant to paragraph (2)*, provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

(4) (i) It shall be the *responsibility of the district attorneys* of the respective counties to *make a recommendation* to the court *at or prior to the time of sentencing* as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

(ii) Where the district attorney has solicited information from the victims as provided in subparagraph (i) and has received no response, the district attorney shall, based on other available information, make a recommendation to the court for restitution.

(iii) The district attorney may, as appropriate, recommend to the court that the restitution order be altered or amended as provided in paragraph (3).

18 Pa.C.S. § 1106 (emphasis added).

Act 1998-121 imposed upon the court the requirement that if restitution is ordered, the amount must be *determined at the time of sentencing,* 18 [Pa.C.S.] § 1106(c)(2). It also placed upon the Commonwealth the requirement that it provide the court with its recommendation of the restitution amount *at or prior to the time of sentencing.* 18 [Pa.C.S.] § 1106(c)(4). Although the statute provides for amendment or modification of restitution "at any time," 18 [Pa.C.S.] § 1106(c)(3), the modification refers to an order "made pursuant to paragraph (2) ..." *Id.* Thus, the statute

> mandates an initial determination of the amount of restitution at sentencing. This provides the defendant with certainty as to his sentence, and at the same time allows for subsequent modification, if necessary. ***See*** 18 [Pa.C.S.] § 1106(c)(3); *cf.* 42 [Pa.C.S.] § 5505 ("Except as otherwise provided or proscribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.").

***Commonwealth v. Dinoia***, 801 A.2d 1254, 1256-57 (Pa.Super.2002).

Here, the trial court sentenced Appellant on June 25, 2015. Then, on July 17, 2015, upon motion of the Commonwealth, the court amended the sentencing order to include $255.57 restitution to Victim. Because the court did not impose restitution at the time of sentencing, it erred in amending the sentence three weeks later to add restitution.

"When a disposition by an appellate court alters the sentencing scheme, the entire sentence should be vacated and the matter remanded for resentencing." ***Commonwealth v. Deshong***, 850 A.2d 712, 714 (Pa.Super.2004) (internal citation omitted). "By contrast, if our decision does not alter the overall scheme, there is no need for a remand." ***Commonwealth v. Thur***, 906 A.2d 552, 569-70 (Pa.Super.2006) (internal citation omitted).

Here, although the restitution order was illegal, it did not upset the entire sentencing scheme.  Thus, we vacate the order amending restitution.[5]

Judgment of sentence affirmed.  July 17, 2015 Order amending restitution vacated.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2016

_____

[5] This decision does not preclude Victim from seeking monetary damages from Appellant in a civil action filed within the applicable statute of limitations.