J-A09009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :           PENNSYLVANIA
   :
v.                :
   :
   :
SHANE EUGENE ALLSHOUSE   :
   :
Appellant       :   No. 936 WDA 2019

Appeal from the PCRA Order Entered May 14, 2019
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000258-2016

BEFORE: SHOGAN, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:           **FILED JUNE 25, 2020**

Shane Eugene Allshouse, Appellant, appeals *pro* se from the May 14, 2019 order of the Jefferson County Common Pleas Court denying his timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We affirm.

This Court summarized the facts and initial procedural history in our memorandum addressing Appellant's direct appeal, as follows:

> A jury found [Appellant] guilty of persons not to possess firearms,[1] a felony of the second degree, and the trial court imposed a sentence of five to ten years' imprisonment.
>
>    [1] 18 Pa.C.S. § 6105(a)(1).
>
>    The evidence supporting [Appellant's] conviction was summarized by the trial court, as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] had been convicted of aggravated assault in 2004 and was thus statutorily disqualified from possessing a firearm, and when Pennsylvania State Trooper Seth Rupp went out to investigate a reported suicide at [Appellant's] residence, [Appellant] informed him that the rifle the victim had used was his. ... In addition, ..., [Appellant] admitted both elements of the offense 18 Pa.C.S. § 6105(a)(1) in front of the jury, first that he had both possessed and used the firearm, and also that he had been convicted of aggravated assault. His only defense was ignorance of the law, which is not a legally cognizable defense and which the jury also did not have to believe as a matter of fact.[1]

> [1] Whether or not the jurors believed [Appellant] had not been told earlier, they heard that Trooper Rupp had told him shortly after the shooting that he could not possess a firearm.

Trial Court Opinion, 4/24/2017, at 1.

As already stated, the jury convicted [Appellant] of persons not to possess a firearm, and the trial court sentenced him to five to ten years' imprisonment. [Appellant] filed a timely post sentence motion for reconsideration of sentence, which was denied . . . .

**Commonwealth v. Allshouse**, 178 A.3d 191, 1899 WDA 2016, *1 (Pa. Super. filed September 25, 2017) (unpublished memorandum). Appellant filed a timely appeal, and we affirmed the imposition of the aggravated-range judgment of sentence. **Id.**

On August 1, 2018, Appellant filed a *pro se* "Notice of Intent to File a Pro-Se Motion for Post Conviction Collateral Relief," followed by a "Motion to Dismiss Counsel, and Proceed Pro-Se" on August 6, 2018. The PCRA court appointed counsel on August 7, 2018, and scheduled a hearing for August 31,

2018, regarding Appellant's request to proceed *pro se*. Appellant filed a second "Motion to Dismiss Counsel, and Proceed Pro-Se" on August 17, 2018. By order dated August 31, 2018, and filed September 7, 2018, the PCRA court, *inter alia*, permitted Appellant to proceed *pro se* and ordered counsel to withdraw, which he did on September 11, 2018.

Appellant filed a *pro se* PCRA petition on September 4, 2018, and a supplemental PCRA petition on September 21, 2018. Appellant requested an evidentiary hearing on January 22, 2019, which was held on April 29, 2019. On May 14, 2019, the PCRA court entered an order denying Appellant's May 6, 2019 request for a rehearing and a separate order denying Appellant's PCRA petition. Appellant filed a timely *pro se* notice of appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant lists the following issues in his appellate brief, which we present *verbatim*:

> 1. Whether the Lower Court erred in dismissing the Defendant's amended petition for post Conviction Collateral Relief?
>
> 2. Whether the P.C.R.A. Court erred when it refused to allow the Appellant to re-convene an evidentiary hearing, due to the Court Clerk's failure to return the Court stamped subpoenas for witnesses?
>
> 3. Whether the P.C.R.A. Court completely ignored the Appellant's allegations of layered ineffective Assistance of Counsel?
>
> 4. Whether Appellant's statement to the the arresting, investigative Officer, was unlawfully pursuaded/solicited or actually voluntarily provided in violation of Miranda.

5. Was Appellant prejudiced by the Commonwealth witness (police Officer) inappropriately revealed "in Unlawful Possession of a Firearm," at trial.

6. Whether Trial/Defense Counsel abandoned the Appellant, when Counsel failed to properly defend the Appellant by invetigating, and preenting witnesses.

7. Whether if witnessess for the Appellant, had been introduced at trial, there would have been a different outcome at trial?

8. Whether the P.C.R.A. Court denied the Appellant a Grazier hearing?

Appellant's Brief at 4–4A.  Our standard of review is settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Mason**, 634 Pa. 359, 130 A.3d 601, 617 (2015) (citation omitted).  We view the record in the light most favorable to the prevailing party in the PCRA court. **Id.** We are bound by any credibility determinations made by the PCRA court where they are supported by the record. **Id.** However, we review the PCRA court's legal conclusions *de novo*. **Id.**

**Commonwealth v. Staton**, 184 A.3d 949, 954 (Pa. 2018).

We do not reach the merits of the issues because Appellant's *pro se* filing is woefully insufficient to meet the requirements of an appellant's brief as outlined by our Rules of Appellate Procedure.  Appellant's Brief at 8–12.  It is well settled that the argument portion of an appellate brief must be developed with pertinent discussion of the issues, including citations to relevant authority and reference to the record.  Pa.R.A.P. 2119(a).  **See Commonwealth v. Samuel**, 102 A.3d 1001, 1005 (Pa. Super. 2014) ("The Rules of Appellate Procedure require that appellants adequately develop each

issue raised with discussion of pertinent facts and pertinent authority."). "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." **Id.** at 1005. It is not this Court's responsibility to develop an argument for an appellant or scour the record to find evidence to support one. **Commonwealth v. Cannavo**, 199 A.3d 1282, 1289 (Pa. Super. 2018).

A panel of this Court offered the following relevant observation regarding the proper formation of the argument portion of an appellate brief:

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. **Commonwealth v. Williams**, 566 Pa. 553, 577, 782 A.2d 517, 532 (2001) (Castille, J., concurring). To do so places the Court in the conflicting roles of advocate and neutral arbiter. **Id**. When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. **Commonwealth v. Luktisch**, 680 A.2d 877, 879 (Pa. Super. 1996).

**Commonwealth v. B.D.G.**, 959 A.2d 362, 371–372 (Pa. Super. 2008).

Appellant's "argument," which also is inconsistent and incompatible with his presentation of the statement of the questions involved, thereby depriving us of any meaningful way to determine whether his "issues" are properly identified, is merely a restatement of each issue without any development. Appellant's "arguments" consist of broad statements of one or two sentences that lack any analysis, reference to the record, or coherent explanation.

- 5 -

Additionally, there are other specific abnormalities that represent noncompliance with our appellate rules, which also constitute waiver. For example, regarding issue eight, related to a **Grazier**[1] hearing, Appellant has abandoned any reference to the assertion completely, which also results in waiver.[2] **See Commonwealth v. Heggins**, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived."). Issue "B5," relating to the sufficiency of the evidence, Appellant's Brief at 12, was not included in the statement of the questions involved, and was not stated in Appellant's Pa.R.A.P. 1925(b) statement. That issue is waived for those additional reasons, as well. **Commonwealth v. Ivy**, 146 A.3d 241, 254 (Pa. Super. 2016) (failure to raise issue in statement of questions involved on appeal waives issue) (citing Pa.R.A.P. 2116(a)); **see also Commonwealth v. Jones**, 191 A.3d 830, 834 (Pa. Super. 2018) (citing Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[2] Moreover, while the certified record lacks a transcript dated August 31, 2018, the PCRA court scheduled a hearing for that date to address Appellant's request to proceed *pro se*, Docket Entry 39, and further, entered an order dated August 31, 2018, permitting Appellant to proceed *pro se*. Docket Entry 45.

Thus, for all of these reasons, we conclude that the issues are waived.[3]

***See Commonwealth v. Delvalle***, 74 A.3d 1081, 1086–1087 (Pa. Super. 2013) (finding claims waived for failure to develop them meaningfully).

Even if the issues were not waived, we would affirm on the basis of the trial court's "Opinion on Defendant's PCRA Petition," filed May 14, 2019, and the order denying Appellant's "Petition for Evidentiary Re-hearing," of the same date, as adopted by the PCRA court in its Pa.R.A.P. 1925(a) opinion filed July 15, 2019.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/25/2020</u>

---

[3] Furthermore, under Pennsylvania law, *pro se* defendants are subject to the same rules of procedure as are represented defendants. ***Commonwealth v. Williams***, 896 A.2d 523, 534 (2006). "[A]ny person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***In re Ullman***, 995 A.2d 1207, 1212 (Pa. Super. 2010). "Although the courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading." ***Commonwealth v. Blakeney***, 108 A.3d 739, 766 (Pa. 2014).

[4] In the event of further proceedings in this matter, we direct the parties to attach copies of the opinions.

IN THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
:
:
vs. : CP-33-CR-258-2016
:
:
SHANE ALLSHOUSE :
          Defendant :

## OPINION ON DEFENDANT'S PCRA PETITION

The defendant, Shane Allshouse ("Allshouse"), filed a timely *pro se* PCRA petition in which he alleged a variety of claims implicating Rule 600, his amenability to prosecution, the Commonwealth's motivation for prosecuting him, his Fifth and Fourteenth Amendment rights, the legality and appropriateness of his sentence, and trial/appellate counsel's effectiveness. Having knowingly and voluntarily waived his right to PCRA counsel and to be present in the courtroom, he appeared *pro se* via video conference for an evidentiary hearing held April 29, 2019. There he briefly testified on his own behalf and proposed to call Erin Cox, Ashley Harshberger, Billie Harshberger, and John M. Bonanti, Esq. as additional witnesses.

It appearing that the defendant did not properly subpoena his would-be witnesses, none appeared to testify. The district nonetheless stipulated that the laywitnesses would have testified consistent with the averments set forth in the Allshouse's "Ex-Parte Motion for an Evidentiary Hearing." Accordingly, the Court finds that they would have testified that the defendant exhibited "good will and [a] fatherly character" toward the decedent; that the decedent was suicidal and mentally ill; that she had attempted to kill herself on prior occasions and likely would have ultimately succeeded whether or not she had access to his rifle; and that he had suffered immensely as a result of her suicide. The Commonwealth further stipulated, and thus the Court finds, that other members of the decedent's family were also suicidal. That testimony was not first presented to the jury, according to Allshouse, because Attorney Bonanti refused to call his witnesses.

As alleged in the defendant's Petition, Supplemental Amendment, and Motion, Attorney Bonanti further failed to investigate or prepare for trial, relying solely on the Commonwealth's evidence; failed to file a motion to suppress and other unspecified pre- and post-sentencing motions "as directed by Defendant"; employed "scare tactics" and coerced him into repeating his





-53-

confession to the jury; failed to object and request a mistrial when the arresting officer testified that he was in unlawful possession of a firearm; and that he had no reasonable basis for any of it. At the hearing, however, Allshouse said nothing about Bonanti's performance, focusing almost exclusively on matters surrounding the decedent's suicide. Asked repeatedly whether he wanted to say more, he added only that the police never read him his *Miranda* rights, that the gun the decedent used to shoot herself was never in his possession; and that he was rarely at the residence where the gun was located. He did not embellish any of those statements, though his brother sought to support the third by showing this jurist the defendant's driver's license. Valid at the time of the decedent's suicide, it reflected a Dubois address.

## Discussion

### *Ineffective Assistance of Counsel:*

Under the three-prong test delineated in *Commonwealth v. Travaglia*, 661 A.2d 352 (Pa. 1995), a defendant must demonstrate three things in order to establish an ineffectiveness claim: 1.) That his underlying claim is of arguable merit; 2.) that counsel's action or inaction was not grounded in any reasonable basis designed to effectuate his interests; and 3.) that but for the act or omission, the outcome would have been different. *Id.* At 357. Failure to satisfy any one of the prongs, as occurred here, will defeat an ineffectiveness claim. *See e.g., Commonwealth v. Cox*, 863 A.2d 536, 544 (Pa. 2004).

Notwithstanding his multiple allegations of ineffectiveness, Allshouse said nothing about Attorney Bonanti's representation, and the only one the Court can analyze based solely on the trial record is that he failed to object or request a mistrial in relation to the arresting officer's testimony that his client was unlawfully in possession of a firearm. That allegation is plainly without merit.

When a person is charged with violating 18 Pa. C.S.A. § 6105, the Commonwealth *must* prove that he was previously convicted of a disqualifying offense. *Commonwealth v. Jemison*, 98 A.3d 1254 (Pa. 2014). Whereas the Pennsylvania Rules of Evidence might otherwise preclude reference to a prior conviction, therefore, they do not have that effect when the purpose of introducing that evidence is to establish a necessary element of the charged offense. *Id.* at 1262. That being the case, it is clear from the record that Attorney Bonanti had no legally viable grounds to lodge an objection or request a mistrial based on testimony about Allshouse's prior conviction for Aggravated Assault.

2

delay or how he was purportedly prejudiced, however, and the record invites no inference of prejudice. On the contrary, the Commonwealth's case depended entirely on Trooper Rupp's testimony about what he witnessed and what the defendant told him on September 29, 2015, together with the introduction of Allshouse's prior conviction for Aggravated Assault. Access to records of the latter was unaffected by the passage of four-and-a-half months, and Allshouse was present and actively engaging with the trooper on the relevant date of offense. He was immediately privy to the most relevant events about which Rupp testified, therefore, and demonstrated through his own testimony that his memory of events was not so clouded by the lapse in time that he could not meaningfully respond to the trooper's averments.

*Involuntary Confession:*

Because Allshouse was not the subject of a custodial interrogation on September 29, 2015, there was no need for the police to issue *Miranda* warnings. As our Supreme Court recently reaffirmed, *Miranda* applies only when a suspect is both in police custody and subjected to interrogation. *Commonwealth v. Yandamuri*, 159 A.3d 503, 519-20 (Pa. 2017). Yet neither criterion fit Allshouse's situation at the time in question. The police were at the residence to investigate a suicide and were speaking with the defendant for that purpose only. (Trial Transcript, 10/20/2016, pp. 4-5). He was not a suspect at that time and was completely free to come and go from his own residence as he pleased. It was only later, after Trooper Rupp ran a criminal history on him, that the matter turned into a criminal investigation. (*Id.* at 9-12). In the eyes of the law, therefore, Allshouse's statements—his "confession"—were gratuitous, *Yandamuri, supra,* at 520, and, as such, were not obtained in violation of his constitutional rights.

*Sufficiency of the Evidence:*

But for his confession, says Allshouse, the Commonwealth did not have sufficient evidence to prove the crime with which he was charged. Because that confession was not obtained in violation of his Fifth Amendment rights, however, it makes no difference.

Nor does it matter that the defendant believes the Commonwealth only prosecuted him because it blamed him for the decedent's suicide, not because it believed he had committed a crime. That contention is completely speculative and is dubious at best given that the Commonwealth was confident enough to prosecute him through trial. Regardless of what the

4

In all its other permutations, the defendant's ineffectiveness claim was incapable of meaningful review absent additional relevant testimony, and he did not offer any. Consequently, there is no evidence that Allshouse even asked Bonanti to file any motions or call the proffered laywitnesses to testify at trial. There is no evidence that the attorney failed to investigate outside of the discovery. And there is no evidence that he utilized "scare tactics" to "coerce" Allshouse into repeating his un-Mirandized confession to the jury. His ineffectiveness claim thus fails in its entirety under *Travaglia*'s first prong.

For the reasons discussed below, the defendant's substantive claims fare no better.

*Rule 600:*

As the record reflects, the subject charge was filed on February 9, 2016. The defendant was then released on unsecured bail. For purposes of Rue 600, then, the Commonwealth had 365 to bring him to trial. *See* Pa.R.Crim.P. 600(A)&(B) (providing that the Commonwealth has 180 days to commence trial against an incarcerated defendant and 365 days to commence trial against an unincarcerated defendant). With respect to Rule 600, therefore, there was no violation to be remedied.

*Due Process—Charging Delay:*

It was September 29, 2015 when the police first went to Allshouse's residence to investigate his girlfriend's daughter's suicide. Trooper Seth Rupp filed the initiating criminal complaint against the defendant less than four-and-a-half months later, and the record belies his contention that the delay amounted to a due process violation.

To establish a due process violation based on pre-indictment delay, said our Supreme Court, a defendant must establish that the Commonwealth's reasons for the delay were improper *and* that he was actually prejudiced by the delay. *Commonwealth v. Louden*, 803 A.2d 1181, 1184 (Pa. 2002). Prejudice, in this context, requires a specific quantum of proof:

> "In order for a defendant to show actual prejudice, he or she must show that he or she was meaningfully impaired in his or her ability to defendant against the state's charges to such an extent that the disposition of the criminal proceedings was likely affected. This kind of prejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness. It is not sufficient for a defendant to make speculative or conclusory claims of possible prejudice as a result of the passage of time."

*Id.* (quoting *Commonwealth v. Scher*, 803 A.2d 1204 (Pa. 2002) (internal citations omitted)). Allshouse's testimony was void of any reference to either the Commonwealth's reason for the

3

IN THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
:
vs. : CP-33-CR-258-2016
:
SHANE ALLSHOUSE :
Defendant :

## ORDER

AND NOW, this 14th day of May 2019, for the reasons articulated in the foregoing Opinion, it is hereby **Ordered** and **Decreed** that the defendant's Petition for Post-Conviction Collateral Relief is **DENIED.**

If the defendant wishes to appeal this judgment to the Superior Court, he shall, within THIRTY (30) DAYS from the date this Order is filed, file and serve a Notice of Appeal as set forth in rules 901-906 of the *Pennsylvania Rules of Appellate Procedure*.

BY THE COURT,

Hon. John Henry Foradora, P.J.

D.A.
Defendant

6

Commonwealth objectively believed, moreover, the Legislature codified the alleged conduct as criminal and the jury believed beyond a reasonable doubt that Allshouse was guilty of it.

As for the defendant's late revelation that he was hardly ever at the residence where the gun was located, which he presumably intends as a means to disestablish the element of possession, the Court rejects it. He testified on his own behalf at trial, and he told the jury that he and his girlfriend had been living together at the Brookville residence for approximately a year-and-a-half at the time of the suicide. (Trial Transcript, p. 20). He may not now undo that testimony just because he thinks an alternative living arrangement would benefit him with respect to this PCRA claim. Where he usually resided at that time is immaterial in any event, as is the address he gave PennDOT when he renewed his driver's license on August 1, 2014, as neither changes the fact that he told Trooper Rupp the gun was his and that he kept it beside the refrigerator inside the residence, *(see id.* at 6)—a statement that, as discussed above, was gratuitously offered. Accordingly, the evidence was indeed sufficient to establish the element of possession so as to warrant the jury's verdict.

*Sentencing:*

*Alleyne v. United States,* 570 U.S. 99 (2013), has no bearing on this case, as the Court did not impose a mandatory or enhanced sentence; what it did was issue a maximum sentence that fell within the aggravated range of the sentencing guidelines. (Sentencing Transcript, 11/18/2016, pp. 6-7). *Alleyne,* therefore, is wholly inapposite.

As for the assertion that the sentence was excessive, moreover, excessiveness is a challenge to the discretionary aspects of the sentence and was the issue discussed by the Superior Court in response to the defendant's direct appeal. Accordingly, the matter has been fully litigated and does not provide an avenue for relief in this context. *See* 42 Pa. C.S.A. § 9543(a)(3) (saying that a petitioner, to be eligible for relief, must plead and prove that the allegation of error has not been previously litigated), and § 9544(a)(2) (saying that a matter has been previously litigated if the highest appellate court in which the petitioner has the right of appeal has ruled on the merits of the issue). Like his trial and pre-trial issues, therefore, Allshouse's sentencing challenges do not avail him under the Post Conviction Relief Act.

5

# IN THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY
## PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :
     :
         vs.                  :      CP-33-CR-258-2016
     :
SHANE ALLSHOUSE             :
         **Defendant**         :

## ORDER

**AND NOW,** this **14th day of May 2019,** for the reasons articulated in the foregoing Opinion, it is hereby **Ordered** and **Decreed** that the defendant's Petition for Post-Conviction Collateral Relief is **DENIED.**

If the defendant wishes to appeal this judgment to the Superior Court, he shall, within **THIRTY (30) DAYS** from the date this Order is filed, file and serve a Notice of Appeal as set forth in rules 901-906 of the *Pennsylvania Rules of Appellate Procedure.*

BY THE COURT,

Hon. John Henry Foradora, P.J.

D.A.
**Defendant**

6

IN THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :
                                         :

          vs.                              :      CP-33-CR-258-2016

                                              :

SHANE ALLSHOUSE                      :
          Defendant                :

## ORDER

AND NOW, this 14th day of May 2019, it is hereby **Ordered** and **Decreed** that the defendant's "Petition for Evidentiary Re-hearing," wherein he asks the Court to reopen the record for additional testimony, is **DENIED**.

A record may be reopened to prevent a failure or miscarriage of justice, *Commonwealth v. Chambers*, 685 A.2d 96, 109 (Pa. 1996), *Commonwealth v. Baldwin*, 58 A.3d 754, 763 (Pa. 2012), and a judge does not abuse his discretion by declining to open a record when doing so will not serve that purpose. *See id.* So it is in this case.

The defendant would like to fault the Clerk of Courts and the Court itself for his proposed witnesses' failure to appear and testify at his PCRA hearing. Having elected to proceed without counsel, though, he was the one solely responsible for making that happen, and the record indicates that it was he, not the Court or the Clerk of Courts, that failed in that regard. It was his obligation to either reach out to his witnesses informally or order and serve subpoenas to compel their appearance, and that he would err in that regard was one of the risks he accepted when he decided to dismiss the attorney the Court had appointed for him. The proper administration of justice was not compromised just because that risk became a reality.

Be that as it may, the defendant was not prejudiced by the absence of his proposed witnesses. As the record reflects, the Commonwealth stipulated and the Court found that the laywitnesses' testimony would have been consistent with the proffer he made in his motion for an evidentiary hearing. At this point, therefore, their actual testimony would only be cumulative.

SCANNED                          ENTERED

Given the defendant's failure to offer his own testimony with respect to Attorney Bonanti's representation, moreover, testimony from the attorney would be irrelevant.[1]

Whether one trusts the accuracy of the record or accepts the defendant's contention that the Court failed him by not compelling his witnesses to attend the PCRA hearing, therefore, the trajectory of the hearing itself—specifically the district attorney's stipulation and the defendant's failure to support his written averments regarding Attorney Bonanti's allegedly ineffective assistance—indicates that the absence of his proposed witnesses made no difference to the resolution of his claims.

IT IS FURTHER ORDERED AND DECREED that the defendant's "Motion Compelling Transmission of Notes of Testimony" is DENIED. Whereas the Court has denied his request for a re-hearing and there is no appeal pending in this matter, he has no need for a transcript of the April 29, 2019 hearing at this time.

BY THE COURT,

Hon. John Henry Foradora, P.J.

D.A.
Defendant

---

[1] As the Court discusses in its PCRA Opinion, the defendant said nothing about his ineffectiveness allegations during his own testimony and, as a result, failed to satisfy even the first of the three-prong of the ineffective assistance of counsel inquiry delineated in *Commonwealth v. Travaglia*, 661 A.2d 352 (Pa. 1995).