J-S27005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLLIN REID | : | |
| | : | |
| Appellant | : | No. 1427 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 27, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000998-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLLIN SCOTT REID | : | |
| | : | |
| Appellant | : | No. 1571 MDA 2022 |

Appeal from the Judgment of Sentence Entered September 1, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001409-2020

BEFORE: BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED NOVEMBER 08, 2023**

Appellant, Collin Scott Reid, appeals from the aggregate judgment of sentence of 75 to 150 years' incarceration imposed at two criminal dockets. All convictions relate to the sexual abuse of Appellant's biological daughter, C.R., who was thirteen years old when the abuse started. Appellant raises five issues on appeal. We affirm.

C.R. testified that on Christmas Eve of 2019, she stayed in Appellant's camper as part of a scheduled custodial visit. At approximately three a.m., Appellant put his penis between her legs, grabbed her breasts and buttocks, and touched her vagina with his fingers. This sexual assault lasted until approximately 5 a.m. C.R. disclosed the incident the next day to one of her brothers. An investigation commenced, during which C.R. revealed additional incidents that had occurred at her father's apartment from roughly March through December of 2019. These incidents included vaginal touching, oral sex, and the use of sex toys.

Appellant was charged at two separate dockets, with docket 1409-2020 pertaining exclusively to the Christmas Eve crimes. Appellant was ultimately convicted of involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123(a)(7); criminal attempt – aggravated indecent assault, 18 Pa.C.S. § 901(a); aggravated indecent assault, 18 Pa.C.S. § 3125(a)(8); two counts of indecent assault, 18 Pa.C.S. § 3126(a)(8); unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1); two counts of corruption of minors, 18 Pa.C.S. § 6301(a)(1)(ii); endangering welfare of children, 18 Pa.C.S. § 4304(a)(1); invasion of privacy, 18 Pa.C.S. § 7507.1(a)(1); indecent exposure, 18 Pa.C.S. § 3127(a); and incest, 18 Pa.C.S. § 4302(b)(2).

At docket 998-2020, Appellant was charged with the crimes occurring between March and December of 2019. He was convicted of two counts of aggravated indecent assault, 18 Pa.C.S. § 3125(a)(1) and (a)(8); corruption of minors, 18 Pa.C.S. § 6301(a)(1)(ii); two counts of indecent assault, 18

- 2 -

Pa.C.S. § 3126(a)(1) and (a)(8); and two counts of criminal attempt (rape and statutory sexual assault), 18 Pa.C.S. § 901(a).

Appellant proceeded to a joint jury trial and was sentenced on May 27, 2022, which included three consecutive, mandatory minimum sentences of 25 to 50 years' incarceration due to a prior conviction. Appellant filed a timely post-sentence motion, which resulted in the trial court's granting partial relief on September 1, 2022, as the court determined that some counts merged and amended Appellant's sentence.[1] Appellant then filed a single notice of appeal on October 3, 2022, docketed at 1427 MDA 2022.[2] Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement.

Before addressing Appellant's claims, we first address the fact that Appellant's single notice of appeal listed both docket numbers in violation of *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). On October 25, 2022, Appellant filed an application to amend, and this Court instructed Appellant to file amended notices of appeal with the trial court, while informing Appellant that this panel retained the option to quash the appeals. We decline to do so.

In *Commonwealth v. Young*, 265 A.3d 462 (Pa. 2021), our Supreme Court overruled *Walker* to the extent that it required quashing the appeal in this scenario. *Id.* at 478 n.19. The *Young* Court permitted the appellate courts to invoke Pa.R.A.P. 902(b)(1), which permits defective notices of

---

[1] The partial grant of relief did not affect the aggregate sentence, as the amended sentences had been imposed concurrently.

[2] The appeal was timely as the thirtieth day, October 1, 2022, was a Saturday.

appeal to be remedied as the appellate court deems appropriate. We accept Appellant's amended notices pursuant to Rule 902 and we now address Appellant's five issues raised in this consolidated appeal:

> I. Was [the] evidence sufficient to convict [Appellant?]
>
> II. Should the Commonwealth have been permitted to admit into evidence and play two (2) prison phone call recordings from May 14, 2020?
>
> III. Was [Appellant]'s 1996 New York conviction an equivalent crime for the purposes of finding the twenty-five (25) year mandatory[-]minimum sentencing enhancement applied?
>
> IV. Should the twenty-five (25) year mandatory[-]minimum sentencing enhancement have applied since [Appellant]'s prior New York conviction occurred prior to Pennsylvania's enactment of Sexual Offender Registration requirements?
>
> V. Was the sentence entered by the Sentencing Court of 75 - 150 years manifestly excessive and an abuse of discretion?

Appellant's Brief at 8-9.

Appellant's first issue generically challenges every element of every conviction. The trial court concluded that Appellant has waived this issue and, in the alternative, that the Commonwealth presented sufficient evidence to sustain all convictions. The Commonwealth argues that the claims have been waived, but asks this Court to affirm in the alternative.

We agree that Appellant waived any challenge to the sufficiency of the evidence, and we decline to address in the alternative whether the evidence was sufficient.

Appellant's concise statement did not specifically challenge any particular conviction, let alone any specific elements. He merely alleged "that

the evidence submitted at Appellant's [t]rial was insufficient to meet the Commonwealth's burden of proving … Appellant guilty of the offenses he was found guilty of, beyond a reasonable doubt." Concise Statement, 10/24/22, at 1 (unnumbered). His brief slightly elaborates upon that argument, asserting that "the Commonwealth did not establish every element of every crime charged through the uncorroborated testimony of C.R., and the Commonwealth did not rule out simple transference between people who resided in the same space and were wearing the same clothing at times." Appellant's Brief at 17.

We conclude that Appellant's concise statement was excessively vague to the degree that Appellant failed to preserve the issue for appellate review. To "preserve a sufficiency claim, the Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient." *Commonwealth v. Widger*, 237 A.3d 1151, 1156 (Pa. Super. 2020) (citation omitted). The failure to do so waives the claim for appellate review, even if the trial court correctly guesses which issues the appellant wanted to raise. *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020). Appellant's statement did not specify any element or any crime, thereby waiving this claim.

We further decline to address whether the evidence was sufficient as an alternative holding. Appellant was convicted at two separate dockets of eighteen separate crimes. The elements of each crime vary and the dockets concern both the specific incident date of Christmas Eve 2019 as well as crimes

occurring over a nine-month period. We will not comb through the record to determine if portions of the record corroborate every element of every crime charged. *See id.* (concluding that a weight claim was waived on appeal due to a "blanket statement wherein [the appellant] declares the evidence was insufficient to convict him of all charges. … This failure is especially significant herein, where the crimes were comprised of multiple elements and arose from two informations."). Moreover, while we cannot overlook Appellant's vague concise statement, we add that his brief fares no better, as he asks this Court to do his job. Appellant's Brief at 16 ("Appellant asks the Superior Court to review the evidence and find that it was insufficient to convict him of these offenses."). That responsibility lies with Appellant, not this Court. "It is [the a]ppellant's obligation to sufficiently develop arguments in his brief by applying the relevant law to the facts of the case, persuade this Court that there were errors below, and convince us relief is due because of those errors. If an appellant does not do so, we may find the argument waived." *Commonwealth v. Gibbs*, 981 A.2d 274, 284 (Pa. Super. 2009). *See also Commonwealth v. Williams*, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring) (stating that appellate courts are "neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter.").

Appellant's second claim challenges the admission of two recorded phone conversations between Appellant and C.R. During these conversations, Appellant discussed whether he should accept the Commonwealth's plea offer

of four to ten years of incarceration. C.R. told Appellant that if he did not take the plea she would have to testify, and Appellant stated he did not know what to do. The Commonwealth argued that the calls were indicative of consciousness of guilt, as it showed he was considering a guilty plea and did not profess his innocence.

Appellant submits that the prejudicial aspect of this evidence derives from his incarceration. "Generally, no reference may be made at trial in a criminal case to a defendant's arrest or incarceration for a previous crime, [but] there is no exact rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for pending charges." Appellant's Brief at 18.

We agree with the Commonwealth that this claim has been waived as Appellant did not raise this objection at trial. "To preserve an issue for review, a party must make a timely and specific objection at trial, and [the] 'Superior Court will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected.'" **Commonwealth v. Smith**, 606 A.2d 939, 942 (Pa. Super. 1992) (quoting **Noecker v. Johns–Manville Corp.**, 513 A.2d 1014, 1018 (Pa. Super. 1986)). As the trial court opinion explains, Appellant's trial objection was limited to the claim that his thought process as to accepting a plea was highly prejudicial and not particularly relevant. Addressing the Commonwealth's arguments, Appellant argued that a willingness to plead

guilty was not indicative of guilt because of the penalties he faced if convicted at trial. Appellant then raised this issue as part of his post-sentence motions, but as the trial court stated in its order addressing the post-sentence motions, his "filing did not elaborate on why he contends the admission of the prison phone calls constituted error." Order, 9/1/22, at 4. The court stated it "gave [Appellant] multiple opportunities to expand on this ground, or offer additional grounds, for his objection; each time, counsel rested upon the objection as stated above." Order, 9/1/22, at 8. As Appellant did not cite the prejudicial effect of revealing his incarceration status to the jury as a basis for excluding the evidence, we conclude that this claim has been waived.

Appellant's third issue concerns the imposition of a mandatory-minimum sentence based on Appellant's prior conviction in New York. Appellant was convicted in New York of the following offense:

A person is guilty of sexual misconduct when:

1. He or she engages in sexual intercourse with another person without such person's consent; or

2. He or she engages in oral sexual conduct or anal sexual conduct with another person without such person's consent; or

3. He or she engages in sexual conduct with an animal or a dead human body.

Sexual misconduct is a class A misdemeanor.

N.Y. Penal Law § 130.20 (hereinafter "New York offense"). Appellant was convicted of violating the first subdivision. Due to this conviction, the Commonwealth sought, and the trial court applied, the following mandatory minimum:

(a) Mandatory sentence.--

(1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the **person had previously been convicted of an offense set forth in section 9799.14** or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense **or an equivalent crime in another jurisdiction**, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9718.2(a)(1) (emphasis added).

The Commonwealth asserted that the New York offense was an "equivalent crime" to at least two offenses specified within Section 9799.14: sexual assault as defined by 18 Pa.C.S. § 3124.1, and indecent contact as defined by 18 Pa.C.S § 3126(a)(1). Sexual assault is a Tier III sexual offense, 42 Pa.C.S. § 9799.14(d)(5), and subsection 3126(a)(1) is classified as a Tier I offense. 42 Pa.C.S. § 9799.14(b)(6).

The General Assembly has employed several different terms when directing a court to compare an out-of-state conviction to a Pennsylvania offense. *See generally A.L. v. Pennsylvania State Police*, 274 A.3d 1228, 1236 (Pa. 2022) ("[T]he General Assembly has used variations on the theme of comparability…. To express the concept of similarity[,] the legislative body has used different adjectives such as 'equivalent,' 'similar,' 'essentially similar,' 'comparable,' and 'substantially the same.'"). In *A.L.*, which involved a question of whether a prior conviction required the appellant to register as

a sexual offender, our Supreme Court endorsed the elemental approach, which involves an examination of the respective elements of the two crimes.

The parties' focus here is not on an elemental comparison, and Appellant's brief does not address whether the offenses were equivalent under that test. Instead, he offers a cursory argument focusing on the applicable penalties. Appellant maintains that, because the New York offense is graded as a misdemeanor whereas the purported equivalent sexual assault statute in this Commonwealth is graded as a felony, the two offenses cannot be deemed equivalents as the permissible range of punishments is too different. However, Appellant has not offered a developed argument in support of his claim. His entire substantive argument in support states, "Appellant contends that the sentencing [c]ourt erred in finding that an equivalency existed between New York's Sexual Misconduct statute and any offense listed under 9799.14 because the maximum punishment scheme is entirely different between New York's statute and any offense listed under 9799.14." Appellant's Brief at 21. Appellant appears to argue that the General Assembly intended that a foreign conviction cannot be an "equivalent offense" if the foreign jurisdiction authorizes a lesser maximum punishment than the comparable Pennsylvania offense.

We disagree. This issue involves a statutory analysis concerning the meaning of the term "equivalent offense." We agree with the Commonwealth that Appellant's "interpretation of 'equivalent' is not legally sound." Commonwealth's Brief at 19. It is clear that in some situations the grading of

- 10 -

an offense is relevant to a comparative analysis. We conclude that this recidivist statute is not one of them.

In **Commonwealth v. Sampolski**, 89 A.3d 1287 (Pa. Super. 2014), Sampolski pled guilty to one count of corruption of a minor, 18 Pa.C.S. § 6301(a)(1), graded as a misdemeanor of the first degree. At the time, a conviction for this offense did not require registration in the Commonwealth's sexual offender registry. When the General Assembly enacted the Sexual Offender Registration and Notification Act ("SORNA")[3] in 2012, it designated the felony version of corruption of minors as an offense requiring registration. The Pennsylvania State Police ("PSP") concluded that Sampolski's misdemeanor conviction was equivalent to the felony version and, therefore, he had to register due to having been convicted of a "comparable military offense or similar offense … under a former law of this Commonwealth[.]" **Id.** at 1288 (quoting statute). The **Sampolski** Court disagreed, concluding that, under **Commonwealth v. Northrip**, 985 A.2d 734 (Pa. 2009), which likewise involved a statutory interpretation argument concerning the term "equivalent offense," the crimes were not equivalents as the elements were different. As relevant to Appellant's argument, the panel observed that the two crimes differed in terms of their grading:

> Finally, the two crimes are different because Corruption (Former) is a misdemeanor of the first degree, whereas Corruption (F3) is a felony of the third degree. Citing to, *inter alia*, **Northrip**, the Commonwealth contends that "the grading of the offenses does

---

[3] 42 Pa.C.S. §§ 9799.1 - 9799.40.

- 11 -

not seem to be among the factors to consider when deciding whether the offenses are equivalent." Commonwealth's Brief at 11. We cannot agree, as the Supreme Court in ***Northrip*** specifically included "classification of the conduct proscribed" as a key determinant in the equivalency analysis. ***Northrip***, ... 985 A.2d at 740.

***Id.*** at 1289–90.

While this statement is *dicta* as the elemental analysis resolved the claim, other decisions have likewise interpreted a statutory comparison test to permit, at least in some circumstances, an assessment of the comparative gradings. For example, in ***Commonwealth v. Bolden***, 532 A.2d 1172, 1175 (Pa. 1987), an elemental equivalence analysis was applied for purposes of calculating a prior record score based upon convictions from other jurisdictions. While this case predates ***Northrip,*** the latter decision approvingly quotes ***Bolden's*** conclusion that an "equivalent offense is that which is substantially identical in nature and definition [to] the out-of-state or federal offense when compared [to the] Pennsylvania offense." ***Northrip***, 985 A.2d at 738 (quoting ***Bolden***, 532 A.2d at 1175-76 (bracketing supplied by ***Northrip***)). The "nature and definition" of an offense can thus include a consideration of its grading. ***See also Commonwealth v. Lites***, 234 A.3d 806, 818 (Pa. Super. 2020) ("It is only after the trial court concludes that the elements of the prior and current Pennsylvania offense are equivalent that the trial court may consider the underlying facts for grading purposes."). We therefore do not apply a *per se* rule that the grading of an offense is irrelevant to an "equivalent offense" analysis.

However, the operation of the mandatory-minimum statute establishes that the General Assembly did not intend for a court to examine the grading of a foreign conviction. Initially, we conclude that the meaning of "equivalent offense" is ambiguous. *See A.L.*, *supra* at 1237 ("[I]n view of this variety of possible meanings for "comparable," the term is ambiguous – or at least "not explicit," 1 Pa.C.S. § 1921(c) – thus warranting consideration of the factors set forth in the Statutory Construction Act."). The same logic applies to "equivalent." *Id.* at 1236 ("The dictionary defines 'comparable' as capable of being compared, worthy of comparison, like or equivalent."). In resolving the ambiguity, the *A.L.* Court stated:

> The occasion and necessity for this aspect of the statute, the mischief to be remedied, and the object to be attained, *see* 1 Pa.C.S. § 1921(c)(1), (3), (4), are all straightforward: to avoid any unfairness or harm to the public that would result if an offender were treated more leniently due to the fortuity that his or her prior conviction arose in a different jurisdiction.

*Id.* at 1237.

The same assessment applies to this recidivist statute. This is evident from the statute's operation, which establishes that the punishment is irrelevant to the imposition of the mandatory-minimum sentence. It is significant that the General Assembly did not implement gradually escalating penalties based on the severity of the prior convictions. Regardless of whether a predicate offense is classified as a Tier I, Tier II, or Tier III offense, a conviction for any one of those offenses subjects an offender to the same mandatory-minimum sentence Appellant received. For example, it makes no

difference, for purposes of the mandatory sentence, whether an offender is convicted of the Tier I offense of indecent assault, 18 Pa.C.S. § 3126(a)(1) (graded as a misdemeanor of the second degree), or the more serious "version" of that crime, aggravated indecent assault, 18 Pa.C.S. § 3125 (graded as a felony of the first or second degree depending on the particular subsection charged). Those offenses are classified into different tiers. **See** 42 Pa.C.S. § 9799.14(b)(6) (classifying indecent assault as a Tier I offense); (d)(7) (classifying aggravated indecent assault as a Tier III offense). Yet an offender who is convicted of either offense must serve a mandatory minimum of 25 years of incarceration if he or she is later convicted of an offense subject to the mandatory sentence. Thus, the severity of the mandatory minimum does not escalate depending on the grading of the prior conviction. On this point, we note that in **Commonwealth v. Baker**, 78 A.3d 1044, 1047 (Pa. 2013), our Supreme Court rejected an argument that the mandatory minimum was grossly disproportionate for a second conviction of possessing child pornography. Then-Chief Justice Castille filed a concurring opinion noting that the severity of penalties for first time offenders is logically structured, but the recidivist provisions are not:

> In short, the overall legislative framework logically recognizes differences in levels of gravity as between sexually assaulting a child (most serious), the filming of such crimes (next most serious), and distributing or possessing the resulting child pornography (third most serious). The recidivist provision, however, draws no such distinctions, and treats the third most serious offense the same as the most serious one. An individual … who is convicted of possessing child pornography for the second

- 14 -

time, is mandated to serve a least five more years of prison time than the maximum term allowable for a first time child rapist.

*Id.* at 1057 (Castille, C.J., concurring).

The manifest legislative intent to harshly punish repeat offenders illustrates that the General Assembly would not have intended for the foreign jurisdiction's grading decision to have any bearing on the applicability of the recidivist provision. The grading makes no difference for Pennsylvania offenses and Appellant offers no reason to think the intent would be any different for a foreign conviction.

We also add that Section 103 of the Crimes Code defines the term "element of an offense," and the grading of an offense does not appear in that definition.

> "Element of an offense." Such conduct or such attendant circumstances or such a result of conduct as:
>
> (1) is included in the description of the forbidden conduct in the definition of the offense;
>
> (2) establishes the required kind of culpability;
>
> (3) negatives an excuse or justification for such conduct;
>
> (4) negatives a defense under the statute of limitation; or
>
> (5) establishes jurisdiction or venue.

18 Pa.C.S. § 103.

This statutory definition suggests that the grading of an offense is analytically distinct from the offense itself. While this does not end the matter, as our prior cases accept that the grading of an offense may be relevant, in conjunction with the foregoing analysis we conclude that the General

Assembly would not have intended to treat Appellant more leniently due to the fortuity of the offense grading. We therefore reject Appellant's specific argument.

At this juncture, we reiterate that Appellant does not raise any argument concerning the relevant elemental comparison test. However, that issue implicates the legality of Appellant's sentence. *See Commonwealth v. Shaw*, 744 A.2d 739, 740 (Pa. 2000) (finding that a claim that the trial court erred by finding a foreign conviction constituted an "equivalent offense" to a Pennsylvania DUI conviction for purposes of sentencing constituted a nonwaivable challenge to the legality of sentence). Thus, this issue may be examined *sua sponte* and the *A.L.* decision dictates that the elemental test set forth therein applies. *A.L.*, *supra* at 1238 (holding that "the categorical approach as described by the Supreme Court is to be applied when ascertaining whether a prior extra-jurisdictional offense is 'comparable' or 'equivalent' under SORNA Subchapter H").

That we may *sua sponte* review the issue does not compel this Court to develop arguments for both parties. Judicial modesty is especially appropriate here because the trial court opinion conducted an elemental analysis and determined that Appellant's New York offense is an "equivalent offense" to the two crimes cited by the Commonwealth. Thus, Appellant was aware of the trial court's analysis and chose not to challenge it. As our Supreme Court stated in *Commonwealth v. Armolt*, 294 A.3d 364 (Pa. 2023), an appellate

court's *sua sponte* ability to raise illegality of sentence claims does not compel the court to do so.

> Although an appellate court **may** *sua sponte* raise and address issues concerning illegal sentences, we may also decline to do so where appropriate. … [E]ven with respect to legality of sentencing claims, appellate courts retain discretion to enforce procedural rules and jurisdictional limits and require such claims be properly presented at the time they are raised in order to obtain review thereof.

*Id.* at 377–78 (cleaned up; emphasis in original). Moreover, responding to Justice Wecht's concurring opinion arguing that the Court should have reviewed the legality of sentence issue *sua sponte*, the Court cited the distinction between a "known" issue and a novel one:

> Indeed, the concurrence admits that what it really seeks is the Court's adoption of a new rule altogether: one that condones the practice of appellate judges raising novel legality of sentencing theories, without prompting from or advocacy by the parties, and then resolving them in the first instance. We decline to endorse such a rule. Although there is nothing improper about an appellate court addressing *sua sponte* a known legality of sentence problem if it appears in a case, a court that goes out of its way to offer new theories for expanding the class of illegal sentencing claims has veered into the "conflicting roles of advocate and neutral arbiter."

*Id.* at 378 n.18 (quoting **Williams**, **supra** at 532 (Castille, J., concurring)).

In **Armolt**, the Court declined to consider whether a particular constitutional claim implicated the legality of sentence doctrine. "[W]e do not resolve whether [Armolt]'s constitutional claims implicate the legality of his sentence such that they are nonwaivable." **Id.** at 380. Still, we do not view the reference to a "known" legality of sentence problem to mean that courts

should freely act as advocate and arbiter simply because a given claim clearly involves a non-waivable challenge to the legality of sentence. We view the "known" nature of the problem to also incorporate a consideration of whether the result is dictated by established precedent. In such cases, the problem of acting as advocate and arbiter is significantly diminished because an existing case dictates the outcome. Here, however, there is no precedent addressing whether Appellant's New York offense is an equivalent offense to any of the offenses specified within 42 Pa.C.S. § 9799.14. Furthermore, a conclusion that the New York offense of sexual misconduct is not an equivalent offense to any offense listed within Section 9799.14 would risk potential mischief as it is probable that some offenders are required to register due to a determination that the New York offense is an equivalent offense to a Pennsylvania crime.

Simultaneously, we do not believe that it exceeds our judicial role to note that the trial court's equivalency analysis may not be correct; the legality of sentence construct extends to this issue, and we could address it on the merits if we chose.[4] By extension, we can also settle for the middle ground

---

[4] The *A.L.* case illustrates the application of the elemental comparison test. There, the PSP determined that A.L., who was convicted in a military court of sexual assault under the Uniform Code of Military Justice, had to register under SORNA. The PSP determined that the offense was "comparable" to the Pennsylvania crime of sexual assault, 18 Pa.C.S. § 3124.1, for purposes of the relevant statute, 42 Pa.C.S. § 9799.14. The *A.L.* Court focused on the different *mens reas* in concluding that the two offenses were not equivalent. The military offense permitted a conviction upon proof that the actor knew or
*(Footnote Continued Next Page)*

of noting the issue, which Appellant may then pursue on collateral review if he wishes. This result is, in our view, fair to both parties, as the Commonwealth will have the opportunity to respond if Appellant pursues the claim. Additionally, as the issue implicates the legality of sentence framework, the issue can be raised under the PCRA without the statutory impediment of waiver. *See Commonwealth v. Jones*, 932 A.2d 179, 181 (Pa. Super. 2007) (holding that a claim challenging legality of sentence "cannot be considered waived for purposes of the PCRA"). Accordingly, Appellant will have an opportunity to develop a specific argument as if it were raised on direct appeal. In sum, declining to decide the merits of this issue does not leave Appellant

---

should have known that the victim was incapable of consent due to intoxication, whereas Section 3124.1 requires recklessness or above. Because the military offense would allow a conviction for negligent acts, the two crimes were not equivalent.

Presently, the trial court and Commonwealth both assume that the common, dictionary definition of "consent" and "sexual intercourse" apply to both the New York offense and Section 9799.14. However, the two statutes differ markedly when it comes to "consent." Pennsylvania law does not define the term. New York, however, does. And its definition of "consent" includes many instances of presumptive consent, which effectively makes the crime one of strict liability, at least in certain cases. For example, per N.Y. Penal Law § 130.05(3)(a), a person "is deemed incapable of consent when he or she is … less than seventeen years old[.]" By doing so, the New York offense arguably sweeps more broadly than Section 3124.1 because it effectively creates a strict liability offense in some circumstances. As stated, we decline to develop an argument for the benefit of Appellant, but this point alone establishes that the offenses may not be similar.

any worse off,[5] while affording the courts with the benefit of adversarial briefing on the claim.

Appellant's fourth issue asserts that the application of the mandatory minimum statute violates the *ex post facto* clause. We disagree.

> Appellant posits that this was an error by the [c]ourt because of the same logic that applies to the treatment of retroactive application of SORNA registration. ***Commonwealth v. Santana***, 266 A.3d 528 (Pa. … 2021). Here, the Pennsylvania Supreme Court held that retroactive application of SORNA was punitive, supporting the finding that such application amounted to unconstitutional *ex post facto* law.

> As in ***Santana***, the sentencing enhancement perpetuated [*sic*] by 42 Pa.C.S.[] § 9718.22(a)(1) is no doubt punitive, and retroactively punished the Appellant for conduct that occurred prior to the enactment of SORNA in the Commonwealth of Pennsylvania.

Appellant's Brief at 23.

***Santana*** does not involve application of a recidivist provision. In that case, our Supreme Court held that its decision in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017), which had deemed the then-existing version of SORNA to constitute a punitive law which could not be applied retroactively, extended to offenders like Santana who had to register in Pennsylvania due to a conviction from another jurisdiction.

> Santana committed a rape in 1983. SORNA was enacted in 2012, and was applied retroactively to the triggering rape in 2015, when Santana moved here, over thirty years after the commission of that offense. Obviously, SORNA is being applied retroactively. All

---

[5] Additionally, deciding the merits of the claim against Appellant would force Appellant to seek further review with our Supreme Court as our holding would constitute law of the case.

that remains is the question of whether SORNA is punitive. In 1983, there were no sexual offender registration laws in New York or in Pennsylvania, and, thus, Santana faced no punishment beyond his imposed sentence. The same cannot be said for 2015. Because rape is classified under SORNA as a Tier III offense, Santana was subjected to the same SORNA requirements as was Muniz. We already have ruled in **Muniz** that those requirements are punitive in nature.

**Santana**, 266 A.3d at 538.

Appellant seeks to apply the **Santana** holding here, arguing that "[t]he conduct which gave rise to the conviction was from June 7, 1995, which was prior to Pennsylvania['s] enacting SORNA." Appellant's Brief at 22. The **Santana** decision simply addressed whether Santana had to register under the then-existing version of SORNA. Here, the application of the recidivist statute has nothing to do with registration obligations. As we stated in **Commonwealth v. Rose**, 81 A.3d 123 (Pa. Super. 2013), *aff'd*, 127 A.3d 794 (Pa. 2015), "in discussing recidivist statutes and *ex post facto* implications, courts have consistently noted that defendants are being punished not for the earlier criminal acts and convictions, but for the subsequent crime that occurred after the passage of the pertinent recidivist statute." **Id.** at 135 (collecting cases). Because Appellant is being punished on the basis of a recidivist statute that existed when Appellant committed his crimes, SORNA is not being applied retroactively and there is no *ex post facto* issue involved.

Appellant's final issue challenges the discretionary aspects of his sentence. This issue is not appealable as of right and Appellant must invoke our jurisdiction.

> [W]e conduct a four part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[ ] § 9781(b).

*Commonwealth v. Martin*, 611 A.2d 731, 735 (Pa. Super. 1992) (most internal citations omitted).

Appellant has met the first two requirements but not the remaining two. Appellant's brief does not include a Rule 2119(f) statement and, as such, there is nothing for this Court to review regarding a substantial question. *Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002) (stating that an appellant must "articulate[] in his Rule 2119(f) statement a substantial question so as to warrant appellate review"). However, the Commonwealth has not objected to this omission, and we may proceed to examine the substantive argument to determine if Appellant has presented a substantial question. *Commonwealth v. Rumbaugh*, 529 A.2d 1112, 1113 (Pa. Super. 1987) (stating that, in absence of Commonwealth's failure to object to the absence of a Rule 2119(f) statement, this Court may examine the claim to determine if a substantial question was presented).

Appellant argues that he is serving a *de facto* life sentence as he will not be eligible for parole until he is 118, which he submits is excessive. Additionally, he submits that the court "failed to consider numerous points raised by sentencing counsel at the time of sentencing, namely … Appellant's prior substance abuse issues, his undiagnosed mental health issues, and the fact that he had taken substantial steps to better himself during his pretrial incarceration by obtaining his G.E.D. among other things."  Appellant's Brief at 26.  Mindful that we are assessing the reasons for granting the petition, as opposed to the merits of the claim, we conclude that Appellant has failed to present a substantial question.  Appellant's lengthy sentence resulted from the trial court's imposing three consecutive instances of the mandatory minimum.[6]  Thus, in effect Appellant is challenging the decision to impose consecutive sentences instead of concurrent.  "[T]his Court has recognized 'the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.'"  **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013) (quotation marks and citation omitted).  The decision to impose consecutive sentences for the heinous nature of these crimes does not constitute an extreme circumstance, notwithstanding the *de facto* life

---

[6]  The trial court imposed consecutive instances of the mandatory minimum at the counts of aggravated indecent assault and attempted rape at docket 998-2020, and the count of involuntary deviate sexual intercourse at docket 1409-2020.  All other sentences were imposed concurrently.

sentence. Moreover, a claim that the trial court failed to adequately consider mitigating factors, even when paired with a lengthy sentence resulting from consecutive sentences, does not generally raise a substantial question. *Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa. Super. 2018) (concluding that the appellant "failed to raise a substantial question with respect to his excessiveness claim premised on the imposition of consecutive sentences and inadequate consideration of mitigating factors").

Alternatively, we would find no abuse of discretion. The trial court addressed Appellant's claim in its order and opinion denying his post-sentence motions:

> Appellant's third post-trial motion is a motion for reconsideration of his sentence. Appellant primarily argues that the [c]ourt failed to properly consider numerous factors at the time of sentencing, specifically Appellant's age, growth, increased insight, and the fact that he had previously undiagnosed mental health issues for which he had become treated and medication compliant since his incarceration. Appellant noted that, in light of his age (43) at the time of sentencing, the [c]ourt's 75 to 150 year sentence is a *de facto* life sentence. Appellant argues that such a sentence is manifestly excessive based on the circumstances of the offenses, the history and characteristics of [Appellant], as well as the lack of public interest and need for protection.
>
> The [c]ourt discussed at length, on the record, its reasons for the sentence it imposed at Appellant's May 27, 2022 sentencing hearing. To summarize, Appellant sexually abused the victim, who was at the time 13 years old, repeatedly over the course of nine months in multiple locations. The offenses included attempted rape, incest, and involuntary deviate sexual intercourse, all felonies of the first degree. The impact on the victim cannot be overstated, especially in light of the fact that she is Appellant's daughter. Appellant was previously convicted of a sexual offense involving a different victim that would have required SORNA registration had it been committed in

- 24 -

Pennsylvania. When fashioning its sentence, the [c]ourt considered Appellant's statement at the time of sentencing, and took into account the efforts he has made to gain insight and grow following his arrest on these charges. It is in part for these reasons that the [c]ourt imposed a lower sentence than requested by the Commonwealth.

In short, this [c]ourt's sentence was not based on partiality, prejudice, bias or ill will. In light of the seriousness of Appellant's crimes, their effect on the victim, and the need to protect both the victim and community, the aggregate sentence of 75 to 150 years was not manifestly unreasonable. Anything shorter would not have fully reflected the gravity of the offenses.

Order, 9/1/22, at 11-12 (footnote omitted).

The General Assembly has established a punitive mandatory sentence scheme for repeat sexual offenders, and we presume that Section 9718.2 authorizes consecutive sentences, as it calls for a minimum of "at least" 25 years of total confinement with no apparent statutory limitation on consecutive sentences.[7] *Cf. Commonwealth v. Fields*, 107 A.3d 738, 744 (Pa. 2014) ("The General Assembly is certainly aware that a defendant may be sentenced for multiple crimes simultaneously. In the context of mandatory minimum sentencing, moreover, it has, on at least one occasion, acted to impose limitations upon multiple sentences where it favors such limitations."). Appellant is not entitled to a volume discount, and it is difficult to overstate the depravity of these crimes. Moreover, Appellant's argument that the court failed to consider mitigating circumstances is belied by the record. While Appellant has failed to ensure that the sentencing transcript was made part of

_____

[7] Even if the statute could be read to bar consecutive sentences arising from the same criminal episode, this case involves several episodes of sexual abuse over a lengthy period of time.

the certified record, the trial court's order and opinion denying his post-sentence motion for reconsideration of his sentence establishes that the court did consider those factors. The judge simply decided to weigh them differently than Appellant wishes.

In this regard, our Supreme Court has "reinforced the notion that a trial court has broad discretion in sentencing a defendant, and concomitantly, the appellate courts utilize a deferential standard of appellate review in determining whether the trial court abused its discretion in fashioning an appropriate sentence." **Commonwealth v. Pasture**, 107 A.3d 21, 27 (Pa. 2014) (citation omitted). "Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed." **Id.** (quoting **Commonwealth v. Walls**, 926 A.2d 957, 961 (Pa. 2007)). Furthermore, the trial court reviewed a pre-sentence report, and we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth. v. Devers**, 546 A.2d 12, 18 (Pa. 1988). We therefore would find no abuse of discretion even if Appellant had invoked our jurisdiction.

Judgment of sentence affirmed.

Judge Bowes joins this memorandum.

Judge Sullivan concurs in the result.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/8/2023